**In the Matter of Dallas O. WILLIAMS.**
No. 72–58.

United States District Court
District of Columbia,
Civil Division.
Aug. 7, 1958.

Howard Adler, Jr., Washington, D. C., for petitioner.

George Updegraff, Washington, D. C., for respondent.

YOUNGDAHL, District Judge.

Petitioner has filed a writ of habeas corpus seeking release from St. Elizabeths Hospital. The facts giving rise to this present proceeding are as follows:

Petitioner was arrested on the evening of February 2, 1958, on a charge of drunkenness. He was charged the following day in Municipal Court and pleaded guilty when his case was brought before that court on February 11.

The Court was concerned with the question of the existence of mental illness on the part of petitioner and, therefore, did not accept petitioner's plea, but ordered that he be given a mental examination under District of Columbia Code, Sec. 24–301(a) et seq.

On April 21, 1958, the Court held a "sanity inquisition". After hearing the testimony of twelve witnesses presented by both the petitioner and the District of Columbia Government, it found the petitioner "of unsound mind" and ordered his commitment to a mental hospital.

After said hearing petitioner sued for relief by a writ of habeas corpus in the District Court, 162 F.Supp. 514, 517. That Court held that he was illegally detained in a mental hospital "in the absence of a determination of [his] competency to stand trial" and ordered such determination to be made within ten days or else the writ would issue. The District Court then went on to say, "If * * * he is found incompetent to stand trial he will be committed under the statute to a mental hospital. If he is found competent to stand trial, he will have his trial, and whether convicted or acquitted he will be returned to the men-

tal hospital under the prior commitment on unsoundness of mind."

This order of the District Court was appealed and the United States Court of Appeals, 102 U.S.App.D.C. ——, 259 F.2d 175, interpreted the disjunctive in the last sentence of Sec. 24–301(a) [1] as follows: "The last sentence, as we read it in its context, comes only to this; the court shall order the accused confined in a mental hospital if it finds that because of unsoundness of mind or for any other reason he is mentally incompetent to stand trial. * * * The purpose of § 24–301(a), we think, is simply to prescribe the procedure for determining whether an accused person can understand the proceedings against him and properly assist in his defense, and to provide for his confinement in a hospital instead of a jail until he can."

In accord with these decisions a hearing was held on July 18, 1958, to determine the petitioner's competency to stand trial. The Court then ruled "that as of this time he is mentally competent to understand the proceedings against him and to properly assist in his own defense." Petitioner volunteered a plea of guilty, which the Court refused to accept. The Court directed the entry of a plea of not guilty and put the Government to its proof.

 Petitioner argues in his motion that once he has been adjudged competent to stand trial, the Court must accept his plea. However, this contention flies in the face of Rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C. A.,[2] and the psychiatric testimony adduced before the Court in this case.[3]

The issues involved in the plea of guilty and the consequences which attach to a plea require a greater degree of awareness than the competency to stand trial. The Court may reasonably find, as it did in this case, that the latter competency may exist and still not feel justified in accepting a plea of guilty on the defendant's behalf.

After the trial court's ruling, the Government then placed on the stand its only witness, Officer William Booth, who testified that on the night of February 2, 1958, petitioner was "observed * * in the middle of the street with his hands up in the air, screaming, and yelling. * * * He had an odor of alcohol on his breath. * * * He appeared to be under the influence of alcohol at first sight." (Transcript pp. 13, 14.) Defendant did not cross-examine and did not offer any testimony on his own behalf.

The Court found the defendant not guilty because of insanity (Transcript p. 20) quite clearly because of the April 21st finding of unsoundness of mind (Transcript p. 16).

Petitioner contends in his motion for a writ of habeas corpus that the use of the finding of April 21st, for any purpose other than to determine competency to stand trial, is contrary to Sec. 24–301 (a) as interpreted by the Court of Appeals and that he is, therefore, being held contrary to law. He further urges that eliminating this April 21st finding, there was no testimony at the trial to form the basis for the Court's verdict.

 This Court is in accord with petitioner's contention that under the

1. " * * * If the court shall find the accused to be then of unsound mind or mentally incompetent to stand trial, the court shall order the accused confined to a hospital for the mentally ill."

2. " * * * The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea

of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

3. Dr. McAdoo testified that petitioner was capable of understanding the charges against him, but did not completely understand the nature of a guilty plea. Dr. Aloysius Miller testified that petitioner could comprehend the nature of the proceedings but might not be aware of the nature of the punishment to be meted out.

Court of Appeals' decision any hearing under Sec. 24–301(a) can be on the issue of competency to stand trial and nothing more. Consequently, the evidence of April 21st cannot be used to sustain a finding of not guilty by reason of insanity.

Moreover, the Durham rule requires a finding of causal relationship between the mental disease or mental defect and the crime committed.[4] This issue of causal relationship was not even mentioned at the hearing of April 21st. Further, the standard involved in competency to stand trial is far less demanding that that of mental disease or mental defect. One might very well be found competent to stand trial and still be found not guilty by reason of insanity.[5]

 There remains, then, the testimony admitted at the trial itself—the testimony of police officer Booth. From the Court's examination of the records of the case it would appear that Officer Booth expressed no opinion as to petitioner's mental health. However, the evaluation of Officer Booth's testimony involves consideration of the sufficiency of the evidence to support the Court's judgment. The proper court to determine this issue is the Municipal Court of Appeals where petitioner's case is now pending. It would be improper for this court to decide this issue and thus transform the writ of habeas corpus into a writ of error, for this would in effect constitute this court as an appellate court from the Municipal Court, whereas under the statute an appeal must be taken to the Municipal Court of Appeals. " * * * (O)rdinarily habeas corpus will not lie where there is another adequate remedy by appeal. * * * But where constitutional rights cannot otherwise adequately be preserved, as where there was no other speedy and efficacious remedy open to petitioner in the usual and orderly course of criminal procedure * * * habeas corpus is proper." Ferris, Extraordinary Legal Remedies 34. In the case at bar, no such showing has been made. A remedy by appeal is readily available in the usual and orderly course of criminal procedure. Petitioner has stressed the undue delay involved in an appeal. The Municipal Court of Appeals is practically current in its calendar and it appears that the appeal will be heard promptly. In any event, in this case the time factor cannot be decisive on this point. The Supreme Court of the United States has frequently refused to entertain a motion for habeas corpus

---

4. " * * * an accused is not criminally responsible if his unlawful act was *the product of* mental disease or mental defect." (Emphasis supplied.) Durham v. U. S., 1954, 94 U.S.App.D.C. 228, 241, 214 F.2d 862, 874, 45 A.L.R.2d 1430.

"The simple fact that a person has a mental disease or defect is not enough to relieve him of responsibility for a crime. There must be a relationship between the disease and the criminal act; and the relationship must be such as to justify a reasonable inference that the act would not have been committed if the person had not been suffering from the disease. * * *

"When we say the defense of insanity requires that the act be a 'product of' a disease, we mean that the facts on the record are such that the trier of the facts is enabled to draw a reasonable inference that the accused would not have committed the act he did commit if he had not been diseased as he was. There must be a relationship between the dis-

ease and the act, and that relationship, whatever it may be in degree, must be, as we have already said, critical in its effect in respect to the act. By 'critical' we mean decisive, determinative, causal; we mean to convey the idea inherent in the phrases 'because of', 'except for', 'without which', 'but for', 'effect of', 'result of', 'causative factor'; the disease made the effective or decisive difference between doing and not doing the act. The short phrases 'product of' and 'causal connection' are not intended to be precise, as though they were chemical formulae. They mean that the facts concerning [the disease and the facts concerning] the act are such as to justify reasonably the conclusion that 'But for this disease the act would not have been committed.'" Carter v. United States of America, 1957, 102 U.S.App. D.C. 227, 252 F.2d 608, 615.

5. Of course, this is the situation which is presented in every case where an acquittal is had because of insanity.

until the appellate processes have been fully explored,[6] and this court is bound to follow their decisions.

The Court notes further Dr. Overholzer's affidavit of August 1, 1958, appended to defendant's answer. In that affidavit he states petitioner is suffering from a mental disorder, a chronic brain syndrome with behavioral reaction. He further attests that petitioner is dangerous to himself and to others and should be in a mental institution. This affidavit indicates that there is now a basis for the commencement of new proceedings under the civil commitment procedure authorized by District of Columbia Code, Sec. 21–306 et seq.

It is clear to this Court from the record and the history of various proceedings involving this petitioner that he is dangerous to the community and is afflicted with a mental illness which requires medical attention and confinement in a mental hospital rather than incarceration in a workhouse or other penal institution. The deterioration in petitioner's condition, as evidenced in the affidavit, eliminates the obstacles which prevented his commitment this past winter. The Court of Appeals has urged the District to utilize the civil commitment procedure. This Court would also recommend that avenue. Should it choose to pursue this course, the District would accomplish its result quickly and further appellate proceedings would be unnecessary.

The motion for habeas corpus is denied.

Counsel will present the appropriate order.

6. Urquhart v. Brown. 1906, 205 U.S. 179, 27 S.Ct. 459, 460, 51 L.Ed. 760 [exception permitted only in cases "of great urgency, that require promptly to be disposed of * * * as cases 'involving the authority and operations of the General Government, or the obligations of this country to, or its relations with, foreign nations.' " Cf. Appleyard v. State of Massachusetts, 1905, 203 U.S. 226, 27 S.Ct. 122, 51 L.Ed. 161, 162; Ex parte Hawk, 1943, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; Young v. Ragen, 1948, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333; Stack v. Boyle, 1951, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469].