**Joseph V. MALINAUSKAS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 74-1256.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1974.

Gregory A. Presnell, Orlando, Fla. (Court-appointed), for petitioner-appellant.

Jeffry Jontz, Robert Leventhal, Asst. U. S. Atty., Orlando, Fla., for defendant-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

Joseph V. Malinauskas, appellant, unsuccessfully sought relief in the District Court under 28 U.S.C. § 2255, contending that his prior guilty plea of having violated the federal bank robbery statute, 18 U.S.C. § 2113, was invalid upon essentially two grounds: (1) that he was mentally incompetent to plead guilty; and (2) that he was under the influence of drugs at the time of the plea.[1]

This appeal presents a question of law which has not previously been answered by this Court. We must determine the proper criteria for assessing the degree of mental competence required, of an accused who pleads guilty, to satisfy the demands of voluntariness under Rule 11, Fed.R.Crim.P. The contention of appellant is that competency to plead guilty voluntarily is of a higher degree than competency to stand trial. The District Court in its order denying relief obviously equated the two standards. We agree and, finding no merit to petitioner's additional contentions, affirm.

Petitioner was indicted on two counts of violations of 18 U.S.C. § 2113. On arraignment, petitioner, represented by retained counsel, entered a plea of not guilty or not guilty by reason of insanity. Subsequent to arraignment petitioner was examined by Dr. Michael Gutman, psychiatrist, and Dr. Robert Edel-

---

1. Appellant contends on appeal that the court erred:

(1) In failing to fully comply with Rule 11, thereby constituting automatic prejudice and requiring that petitioner be allowed to re-plead.

(2) In concluding that petitioner was mentally completed to plead guilty.

(3) In concluding that petitioner's mental capacity to plead guilty was not impaired by drug usage or influence.

(4) In refusing to grant writs of habeas corpus ad testificandum and by its denial of petitioner's motion for rehearing respecting the issue of drug usage.

(5) In overruling petitioner's objections to the testimony of prior retained counsel.

man, psychologist, who consulted with each other and then rendered written reports to petitioner's counsel.

Dr. Gutman reported that he interviewed petitioner and evaluated him in accordance with counsel's request. He found "no evidence of psychotic thinking or behavior." Petitioner was "friendly and cooperative and appeared to be quite depressed over his present plight. There were strong leanings toward anti-social acting out, but there was also evidence of a very deep inner insecurity and feeling of inadequacy and lack of self-confidence and self-esteem. His intellectual functioning was very good and there was no evidence of organic deficit in his judgment. He showed a tendency toward understanding of what was right and what was wrong, but his ego control mechanisms indicate that he does not always have the ability to display control over his impulses." Dr. Gutman concluded his report on petitioner by stating:

> "I do not feel that this man is psychotic, nor does he fit either the McNaughten's [sic] Rule or the American Law Institute criteria for lack of criminal responsibility. I believe he is responsible for his acts. He is able to aid and assist counsel in his own defense."

Dr. Edelman reported the significance of results of certain psychological evaluation tests administered to petitioner. He interpreted his behavioral pattern as "consistent with self-punitive behavior because of its inept, obvious and eventually self-defeating nature." His diagnostic impression on the basis of behavioral observation and test responses was "dissociative reaction."

As a result of these reports petitioner, again represented by retained counsel, withdrew his pleas on April 27, 1971 and entered a plea of guilty to Count 2[2] of the indictment, whereupon the Government dismissed the first count. Appellant was sentenced to thirty years' imprisonment at the Atlanta federal penitentiary.

This section 2255 petition was subsequently filed and an evidentiary hearing granted, for which counsel was appointed to represent petitioner. Prior to the hearing, petitioner by motion requested that seven witnesses, who allegedly observed his conduct prior to his plea, be subpoenaed to testify in regard to whether or not petitioner was mentally competent to enter an intelligent and voluntary plea. Appellant contended in his motion that the testimony of each of the seven witnesses, five of whom were incarcerated convicts, would corroborate his contention that his plea of guilty was the product of a mental disorder which created an irresistible impulse to suffer self-punitive action, that he had suicidal tendencies and that he was under the influence of drugs at the time that he changed his plea. The District Court permitted the subpoenaing of Edsel Griffin, a prisoner who had been incarcerated in the same cell block with petitioner, and the prison chaplain, James Bryan, who had ministered to petitioner prior to the entry of his plea, but denied the motion in respect to the additional five potential witnesses.

At the evidentiary hearing the District Court heard testimony of petitioner, his former retained counsel, the two witnesses subpoenaed at the request of petitioner, Doctors Gutman and Edel-

---

**2.** Count II of the indictment charged that "On or about March 18, 1971, at Orlando, Florida, in the Middle District of Florida, Joseph V. Malinauskas wilfully and unlawfully and with felonious intent, did take by force and violence and by intimidation, from the person and presence of Ralph C. Haslar and Lillie E. Tompkins, $8,704.00 in money and other property consisting of uncancelled checks, belonging to and in the care, custody, control management and possession of the

American Federal Savings and Loan Association, Azalea Park Branch, the deposits of which were then insured by the Federal Savings and Loan Insurance Corporation, and Joseph V. Malinauskas in avoiding or attempting to avoid apprehension for the commission of the aforesaid acts, did force Ralph C. Haslar and Lillie E. Tompkins to accompany him without their consent; in violation of Title 18, United States Code, Section 2113(e)."

man, who had reexamined petitioner prior to the hearing, and Dr. Robert James MacMurray, psychiatrist, whom the judge had appointed to examine petitioner several days before the hearing.[3]

Although there was testimony to the effect that petitioner was depressed, emotional, neurotic and tending toward self-punitive behavior, there is nothing in the evidence which would have caused the district judge to conclude that petitioner was mentally incompetent to intelligently and voluntarily plead guilty. To the contrary, Dr. Gutman, who had examined petitioner prior to his plea and again before the evidentiary hearing, was of the opinion that petitioner was mentally competent to stand trial, was aware of and understood the charges against him and capable of assisting counsel in his own defense. Dr. MacMurray's testimony corroborated that of Dr. Gutman. While Dr. Edelman expressed some doubt as to petitioner's ability to plead guilty, he admitted that had he been aware of petitioner's social history and involvement in prior crimes, he would have reconsidered his diagnosis.

*The standard for mental competence of an accused to voluntarily plead guilty.*

Counsel for appellant expressly admits that the district judge complied with all the "technical requirements of Rule 11," but contends that a different medical-legal standard should apply to the voluntariness of a guilty plea and that a defendant's competence to stand trial is not determinative of the issue.

Based on the evidence adduced at the hearing, the District Court found "that the petitioner was competent to understand the nature of the proceedings against him and to assist his counsel in those proceedings at the time of the change of plea on April 27, 1971." We have no difficulty in finding that the conclusion by the District Court is abundantly supported by both the medical and lay evidence and the record itself at the time of change of plea. This, however, does not fully answer appellant's

---

3. Dr. MacMurray testified that he had examined petitioner and that he had read Dr. Gutman's and Dr. Edelman's prior evaluation. It was Dr. MacMurray's opinion that at the time petitioner pled guilty he was mentally competent to so plead and that his plea was intelligently and voluntarily made. Dr. MacMurray was told by petitioner that he had been sentenced to thirty years in Atlanta, and realizing the type of individual he would face in Atlanta, something he did not know he was in for, he decided to put in his petition for a new trial. Dr. Gutman described petitioner as suffering from a "certain chronic character and behavior disorder" and possessing impulses toward self-punitive action; it was his opinion that these elements would not preclude a person guilty of an offense from competently, voluntarily and intelligently entering a plea of guilty to that offense. Dr. Gutman reiterated that it was his opinion prior to petitioner's change of plea that petitioner was mentally competent to stand trial, was aware of and understood the charges against him and capable of assisting counsel in his own defense, and that there was no change in his former position or findings. Dr. Edelman testified that he had administered three psychological tests

to petitioner. His evaluation of the tests was that petitioner "was extremely depressed. I had some doubts as to his ability to render appropriate plea because of these elements." He concluded from the tests that petitioner had a hysterical personality, which he explained as a neurotic condition, a disassociated type. If Dr. Edelman had known about petitioner's prior crimes he said it probably would have cast some doubt on the validity of his impression.

The chaplain minister, James H. Bryan, testified that although the majority of inmates are depressed about their status in life, that petitioner's depression was deeper than that of the average inmate. The fact that petitioner felt that he had a death sentence facing him, in the chaplain's opinion, had an effect on petitioner. Petitioner testified that he was under the influence of drugs at the time he changed his plea. His ex-cell-block prisoner witness, Edsel Griffin, corroborated that testimony. Mr. William Barnett, petitioner's retained counsel, who appeared in court with him on the day of the plea change, testified that there was no indication that petitioner was incompetent to voluntarily and intelligently enter a plea of guilty on that day, or that he had been taking drugs.

contention. Admittedly, the District Court applied the Supreme Court's standard for judging an individual's competency to stand trial, set out in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960), in the following language: "[T]he test must be whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." [4]

While appellant concedes that the test for competency to enter a guilty plea has not been precisely stated by the Federal Courts, he nevertheless contends that the standard of competency should be higher for the entry of a plea than that applied for a person to stand trial. In the case of In Re Williams, D. D. C. 1958, 165 F.Supp. 879, 881, cited by appellant, the psychiatric testimony established that petitioner did not completely understand the nature of a guilty plea or the nature of the punishment to be meted out. The court said: "The issues involved in the plea of guilty and the consequences which attach to a plea require a greater degree of awareness than the competency to stand trial." The D. C. Circuit quoted the *Williams* test in McCoy v. United States, 1966, 124 U.S.App.D.C. 177, 363 F.2d 306, 307 n. 3. There the court, in addressing itself to the discretion vested in the court to refuse to accept a plea of guilty voluntarily made with an understanding of

the nature of the charge, cautioned that "the plea should not be refused without good reason" and cited the *Williams* language for comparison. Language from United States v. Kincaid, 4 Cir., 1966, 362 F.2d 939, also relied on by appellant, is merely suggestive of the need of expansion of judicial inquiry beyond the requirements of Rule 11. The rule, commented the court, "requires something more than conclusionary questions phrased in the language of the rule. It contemplates such an inquiry as will develop the underlying facts from which the court will draw its own conclusion." *Id.* at 941. This observation by the court in *Kincaid* is in no way inconsistent with the District Court's application of the express and implied requisites of Rule 11. At the time of the entry of the guilty plea, defense counsel informed the court, in Malinauskas' presence, of the psychiatric and psychological examinations conducted and the results of those examinations which militated against the plea of insanity.[5] Thereafter, the court in an effort to determine if defendant acquiesced in counsel's advice ascertained from defendant that he had been represented by his attorney since shortly after apprehension, that he had had opportunity to consult with counsel during that time and that he was satisfied with the representation given him.

■ In arguing for a higher standard of competence for a voluntary guilty plea, appellant refers us to certain language in Johnson v. United States, 5 Cir., 1965, 344 F.2d 401, and White v.

---

4. *See also* Blake v. United States, 5 Cir., 1969, 407 F.2d 908, 910 (en banc) ; Merrill v. United States, 5 Cir., 1964, 338 F.2d 763.

5. Counsel stated:

"Pursuant to our plea of not guilty by reason of insanity, we had Mr. Malinauskas examined by Dr. Michael Gutman, a physician specializing in psychiatry and a Diplomat in the American Board of Psychiatry and Neurology and a gentleman experienced in such matters and has testified in this Court and qualified as an expert here and also under his direction, Dr. Robert Edelman, who is a psychologist, examined Mr. Malinauskas. Both ren-

dered reports to our office and both have consulted with each other and it is their opinion that Mr. Malinauskas is responsible for his acts and is able to aid and assist counsel in his own defense and they were advised and understood the various tests used by this Court, the lay tests and the more familiar tests and Mr. Malinauskas does not come under any of the tests that we are speaking of. This has been gone into—I mentioned this to the Court since it was raised to the Court as an issue, we wish to withdraw both pleas of not guilty by reason of insanity and enter a plea of guilty on Count Two."

United States, 5 Cir., 1972, 470 F.2d 727. In *White* we remanded for the purpose of having the District Court order an examination of petitioner under 18 U.S.C. § 4244. We said, "We have no doubt that the level of competency required to enter a plea *must be at least as high* as that required to assist in defense, which is the standard of § 4244." 470 F.2d at 728. (Emphasis added.) In *Johnson* we noted that "Whereas 'insanity' might be necessary for an acquittal, a lesser mental disorder *might* prevent a defendant from standing trial, and a still lesser degree *might* vitiate a waiver of counsel." 344 F.2d 401, 406 n. 13. (Emphasis added.) Neither the language in *White* nor in *Johnson* can serve as a predicate for holding, as appellant urges us to, that the competency required of an accused to enter a voluntary plea of guilty is of a higher degree than the competency to stand trial. We agree with the Tenth Circuit that the test of mental competency at the time of trial or the entering of a plea in a criminal case is the same. *See* Dusky v. United States, 362 U.S. 402, 403, 80 S. Ct. 788, 789, 4 L.Ed.2d 824 (1960); Wolf v. United States, 10 Cir., 1970, 430 F.2d 443, 444; Crail v. United States, 10 Cir., 1970, 430 F.2d 459, 460; Wolcott v. United States, 10 Cir., 1969, 407 F.2d 1149, 1151. *See also* United States v. Webb, 1 Cir., 1970, 433 F.2d 400.

*The District Court fully complied with Rule 11.*

■ Appellant admits that the court technically complied with Rule 11, but inconsistently argues that full compliance was not made. We are aware of course that when constitutional rights are at issue, mere formalistic recitations regarding the voluntariness of a guilty plea will not suffice. *See, e. g.*, Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); United States v. Anderson, 5 Cir., 1972, 468 F. 2d 440. This, however, was not the case here. At the change-of-plea proceedings the court went to great lengths to ascertain that the accused was pleading guilty of his own volition. The record indicates no confusion or lack of awareness on the part of petitioner when he elected to change his plea. Numerous and repetitive questions directed to him by the court for the purpose of determining petitioner's understanding of the proceedings, his voluntariness in entering a guilty plea and the consequences of that plea, were answered unhesitatingly and intelligently. The basis for appellant's contention appears to be that the court failed to inquire specifically into the competency of defendant to plead guilty. Considering, however, that the court had knowledge that the medical experts had reported defendant mentally competent and that defendant's withdrawal of his insanity plea was based on those psychiatric evaluations, we are at a loss to discern what more was expected, or could have been learned, from further judicial inquiry in this regard. Understandably, under certain circumstances not present here, further investigation of competence is required to determine the voluntariness of the plea. If, for example, in the present case, after having pled not guilty by reason of insanity plaintiff had withdrawn that plea without obvious or declared justification, it would have been incumbent on the court to make further inquiries and possibly provide for psychological or psychiatric evaluation. But here that evaluation of competency had preceded the plea change. *Kincaid, supra,* strongly relied on by petitioner, is unlike the present case since *Kincaid* for the first time requested psychiatric help at the plea proceedings. Such a suggestion might have caused the District Court to require investigation and evaluation into Kincaid's competence. The court's failure in this regard, however, was remedied by remand for an evidentiary hearing. In the instant case there was not only prior psychiatric evaluation which obviously motivated the change of plea, but defendant was also accorded an evidentiary hearing which merely confirmed what had already been established—that defendant was competent to

plead guilty. Moreover, the district judge and petitioner's retained counsel, who were present at both the plea-change proceedings and the evidentiary hearing, had the advantage of observing petitioner's demeanor and assessing from a layman's viewpoint his mental alertness and awareness of the proceedings. Counsel Barnett, who had met with petitioner on numerous occasions prior to his conviction, observed no abnormal behavior by petitioner on the day that petitioner changed his plea.

The dominant purpose of the Rule 11 inquiry is the ascertainment by the court of the voluntary character of the guilty plea. The inquiries designed to rule out threat, coercion and plea bargaining, as improper motivations for the plea,[6] or to establish the accused's awareness of the rights he will forfeit [7] and the maximum sentence to which he may be subjected,[8] are all means designed to assure the court that the plea is in fact voluntary. Mental competence to plead guilty is another such factor.[9] If the court is not convinced of the competency of a defendant there are methods for resolving the doubt by psychological evaluation.[10] Here, not only was the court repeatedly assured of defendant's voluntariness, it also had the benefit of the psychological diagnosis of competence. "The voluntariness of [an accused's] plea can be determined only by considering all of the relevant circumstances surrounding it", Brady v. United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469, 25 L.Ed.2d 747 (1970), and "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case." McCarthy v. United States, 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). We are convinced that the inquiry by the court on the issue of voluntariness fully complied with the requirements of Rule 11.

*There was no violation of the attorney-client privilege.*

In his motion to vacate judgment and conviction petitioner put into issue the question of his mental competency at the time of the guilty plea. Mr. Barnett, petitioner's prior retained counsel, who had consulted with petitioner before the change-of-plea proceedings and who appeared with him in court on that day, was called by the Government as a witness. Counsel testified that from his observations and discussions with petitioner he could find no indication that he was incompetent or under the influence of drugs. Our recent decision in Clanton v. United States, 5 Cir., 1974, 488 F.2d 1069, disposes of petitioner's contention that the testimony violated the attorney-client privilege.

*There was no abuse of discretion by the court in denying the motion to permit issuance of writs of habeas corpus ad testificandum.*

Following the evidentiary hearing, petitioner filed a motion for rehearing alleging that the court abused its discretion in refusing to issue subpoenas to four of the five incarcerated felons requested as witnesses to substantiate his contention that he was in a drugged condition at the time of his plea. As already noted, one of the five witnesses, Edsel Griffin, was permitted to testify. Griffin corroborated petitioner's testimony, that petitioner was under the influence of drugs on the day in question. The court found the testimony of both petitioner and Griffin unreliable and incredible. On motion for rehearing coun-

---

6. *See* Machirbroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971); Bryan v. United States, 5 Cir., 1974, 492 F.2d 775 (en banc).

7. *See* McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

8. *See* Marvel v. United States, 380 U.S. 262, 85 S.Ct. 953, 13 L.Ed.2d 960 (1965); United States v. Blair, 5 Cir., 1972, 470 F.2d 331.

9. *See* Johnson v. United States, 5 Cir., 1965, 344 F.2d 401.

10. 18 U.S.C. § 4244.

sel for petitioner was permitted to file affidavits of each of the proposed witnesses in regard to the testimony which they would expect to give. The district judge found that the content of the affidavits were merely cumulative of that already heard and disbelieved from the witness Griffin, and inconsistent with the credible evidence already adduced and with his own knowledge as a result of presiding at the time that petitioner pled guilty. Consequently, he denied the motion for rehearing. Appellant admits that it is within the court's discretion whether to grant a request for issuance of writs of habeas corpus ad testificandum. Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895). We find no abuse of discretion here.

Affirmed.