833 F.2d 1430
 Sampson ARMSTRONG, Petitioner-Appellee, Cross-Appellant,
v.
Richard L. DUGGER, Secretary, Florida Department of Offender
Rehabilitation, and Tom Barton, Superintendent,
Florida State Prison at Starke, Florida,
Respondents-Appellants, Cross-Appellees.
 No. 86-3642.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 23, 1987.
Rehearings Denied Jan. 14, 1988.
 
 Robert Krauss, Asst. Atty. Gen., Tampa, Fla., for respondents-appellants, cross-appellees.
 Peter Buscemi, Morgan, Lewis, & Bockius, Washington, D.C., Larry H. Spalding, Office of Capital Collateral Representative, Tallahassee, Fla., for petitioner-appellee, cross-appellant.
 Appeals from the United States District Court for the Middle District of Florida.
 Before VANCE, JOHNSON and CLARK, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 Respondents appeal an order by the United States District Court for the Middle District of Florida, conditionally granting Sampson Armstrong's petition for federal habeas relief with respect to the sentencing phase of his trial. The district court conditionally granted the writ on two grounds: (1) counsel was ineffective at the sentencing proceeding for failing to investigate and present mitigating evidence; and (2) the sentencing phase of the trial violated the requirements of due process. We affirm the district court's judgment on the first ground, but reverse on the second.
 
 
 2
 Armstrong also claims that the jury instructions at the sentencing hearing were unconstitutional under Hitchcock v. Dugger, --- U.S. ----, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The district court ruled that this claim was procedurally barred. We reverse this ruling and hold that the trial court's instructions violated Hitchcock and Lockett. Because we decline to reach the issue of whether the violation was harmless, however, we do not make this an alternative ground for granting the writ.
 
 I.
 
 3
 Armstrong was convicted on September 30, 1975 in the Circuit Court of Hardee County, Florida on two counts of first degree murder and one count of robbery. The jury had deliberated for about four hours after a full day of testimony, and had returned a guilty verdict against Armstrong and his co-defendant at about 8:40 p.m. The trial judge gave the jury the option of beginning the penalty phase at 9:00 p.m. or returning the next day. The jury decided to proceed that night. There was no objection by Armstrong's trial counsel. Armstrong's parol officer, Betty Fine, was the sole mitigating witness called by Armstrong's counsel during the sentencing phase. The entire sentencing proceeding, including evidence, arguments, instructions, deliberation, and sentencing lasted a little more than one hour. Armstrong was sentenced to death for the two murder counts and to life imprisonment for the robbery.
 
 
 4
 After exhausting his state remedies,[1] Armstrong filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. The district court conducted an evidentiary hearing on Armstrong's claim that he was denied effective assistance of counsel. The district court granted the writ on two grounds. First, the court found that defense counsel's failure to investigate and present mitigating evidence rendered his assistance constitutionally ineffective. Second, the court found that the length of the sentencing proceeding combined with the lateness of the hour violated due process standards. The state appeals both rulings.
 
 II. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 5
 In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated a two-prong test for determining when a defendant has been denied effective assistance of counsel. In order to obtain the reversal of a conviction or a death sentence, a defendant must show that (1) counsel's performance was deficient and (2) the deficiency prejudiced the defense. See id. at 687, 104 S.Ct. at 2064; Magill v. Dugger, 824 F.2d 879, 885 (11th Cir.1987). At the evidentiary hearing in district court Armstrong's habeas counsel presented the testimony of Armstrong's trial counsel, an expert witness, seventeen other witnesses and documentary evidence. The availability of a substantial amount of mitigating evidence was established.
 
 
 6
 The district court concluded that trial counsel's performance was deficient for three reasons. First, trial counsel failed to prepare for the sentencing proceeding by conducting a meaningful investigation. Armstrong's trial counsel testified at the evidentiary hearing that he spoke with Armstrong's parol officer and arranged for her to testify at the sentencing trial. The only other preparation between the conclusion of the trial and the beginning of the penalty phase was a single conversation with the petitioner, his mother and stepfather. Second, several mitigating aspects of petitioner's character could have been proved by witnesses who were available at the time of the trial. Finally, several of the witnesses obtained by habeas counsel would have testified at the sentencing proceeding had they been asked.
 
 
 7
 Under some circumstances an attorney may make a strategic choice not to conduct a particular investigation. See Lightbourne v. Dugger, 829 F.2d 1012, 1025-26 (11th Cir.1987); Foster v. Dugger, 823 F.2d 402, 407-08 (11th Cir.1987). "A criminal defense attorney has a duty to investigate, but this duty is limited to reasonable investigation." Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986) (citing Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066), cert. denied, --- U.S. ----, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). An "attorney's decision not to investigate must not be evaluated with the benefit of hindsight but accorded a strong presumption of reasonableness." Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985); see Porter v. Wainwright, 805 F.2d 930, 935 (11th Cir.1986).
 
 
 8
 The decision not to investigate, however, must be reasonable. See Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066; Elledge v. Dugger, 823 F.2d 1439, 1444 & n. 9 (11th Cir.1987); Tafero v. Wainwright, 796 F.2d 1314, 1320 (11th Cir.1986); Mitchell, 762 F.2d at 889; cf. Magill, 824 F.2d at 889 (failure to present evidence at sentencing may not be strategic). The testimony by Armstrong's trial counsel at the evidentiary hearing revealed that his investigation and preparation for the penalty phase of Armstrong's trial was negligible.[2] The attorney had been a member of the bar for only eight weeks, and this was the first serious criminal trial he had ever handled. When asked why his preparation for the penalty phase was so limited, the attorney said: "I think it was my inexperience coupled with the fact that it was a new procedure." He explicitly testified that it was not in any way a strategic or tactical decision. The district court correctly found that trial counsel's failure to investigate and present mitigating evidence fell below the objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S.Ct. at 2065; see also Elledge, 823 F.2d at 1445 (failure to interrogate petitioner's relatives and to seek an expert witness was outside range of competent assistance); Thomas v. Kemp, 796 F.2d 1322, 1324 (11th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986).
 
 
 9
 The state argues that the district court failed to properly apply the prejudice prong of the Strickland test, because the mitigating character evidence obtained at the evidentiary hearing was either brought out at some point during the guilt or sentencing phase of the trial or the jury would have viewed the evidence as aggravating. We disagree. The major requirement of the penalty phase of a trial is that the sentence be individualized by focusing on the particularized characteristics of the individual. See Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982); Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). The evidence before the district court plainly established that Armstrong's trial counsel failed to provide the jury with the information needed to properly focus on the particularized characteristics of this petitioner.
 
 
 10
 Armstrong and various family members testified about his poverty and the poor living conditions of his childhood. Armstrong's grandmother testified that Armstrong did not have adequate adult supervision as a child. She further testified that his work as a fruit picker during his early years supplemented his grandmother's income, but resulted in irregular school attendance. Armstrong's mother testified about his reputation as a hardworking child. Several witnesses testified about Armstrong's history of nonviolence and his religious activities. Both Armstrong and his mother testified about his epileptic seizures, and an expert, although he did not have any contact with petitioner at the time of the trial, testified that petitioner was mentally retarded and had organic brain damage. The demonstrated availability of undiscovered mitigating evidence clearly met the prejudice requirement. See Strickland, 466 U.S. at 696, 104 S.Ct. at 2069.
 
 III. DUE PROCESS
 
 11
 The district court concluded that the sentencing proceeding fell below "minimum constitutional standards" because the proceeding began late in the evening after a full day of trial and lasted less than one hour. The Constitution requires neither that a capital sentencing proceeding be a certain length nor that the sentencing hearing begin at certain hours. Rather, a proceeding is consistent with the requirements of due process provided it is not fundamentally unfair. See Peek v. Kemp, 784 F.2d 1479, 1508 (11th Cir.) (en banc) (Johnson, J. dissenting), (citing Wainwright v. Greenfield, 474 U.S. 284, 293-94, 106 S.Ct. 634, 639-40, 88 L.Ed.2d 623 (1986)), cert. denied, --- U.S. ----, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986).
 
 
 12
 A defendant's right to due process is not violated when the jury deliberates for a short period of time because the empaneled jury is of one mind before beginning deliberations. Cf. Peek, 784 F.2d at 1481-85 & n. 2. Neither is due process violated when a jury prefers to continue long into the evening. See, e.g., United States ex rel. Brothers v. Rundle, 302 F.Supp. 402, 404-05 (E.D.Pa.1968) (defendant not deprived of his right to due process where jury's deliberations begin at 4 p.m. and additional instructions are given at 10 p.m.), aff'd, 414 F.2d 244 (3rd Cir.1969). But see United States ex rel. Leguillou v. Davis, 115 F.Supp. 392 (D.V.I.1953) (mandates of due process are violated when jurors are required to deliberate all night without sleep). Defense counsel voiced no objection and from all that appears from the record he may have decided that it was to Armstrong's advantage to proceed at that time.
 
 
 13
 There is also no due process requirement concerning the length of a defense presentation. Due process focuses on the requirement that the defendant have the opportunity to present evidence. In a given case a properly prepared attorney may make a wise strategic decision to make a very brief presentation at the sentencing phase. Armstrong's trial counsel had an opportunity to present evidence on his client's behalf. The district court improperly focused on the length of proceeding and the time the proceeding began. We reverse the district court's grant of habeas relief on the grounds that the sentencing proceeding denied Armstrong's right to due process.
 
 IV. THE CROSS-APPEAL
 
 14
 On cross-appeal Armstrong asserts that the trial court's instructions prohibited the jury from considering nonstatutory mitigating circumstances. The trial court's jury instructions were virtually identical to the instructions recently reviewed by the Supreme Court in Hitchcock v. Dugger, --- U.S. ----, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).[3] The Hitchcock Court considered whether the Florida death penalty statute, which was also in effect at the time of Armstrong's trial,[4] precluded the sentencing authorities "from considering 'any relevant mitigating evidence.' " Id. at ----, 107 S.Ct. at 1822 (quoting Skipper v. South Carolina, 476 U.S. 1, ----, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986)); see Eddings, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Supreme Court in Hitchcock concluded that the sentencing proceedings did not meet the Skipper requirements because neither the advisory jury nor the judge considered any of the nonstatutory mitigating circumstances introduced by the petitioner.[5]
 
 
 15
 In this case the jury instructions were clearly unconstitutional under Hitchcock and Lockett. As in Hitchcock, both the advisory jury and the judge believed that they were limited by statutory mitigating factors.[6] The trial court's instructions to the jury included a statement that the "[m]itigating circumstances by Statute are ...," followed by the list of statutory mitigating circumstances. After receiving the jury's recommendation of death, the trial judge stated that the aggravating circumstances "are not set off by mitigating circumstances, in particular, the age of the defendant [a statutory mitigating circumstance]." Following the language of the statute the judge also found that petitioner acted neither under duress nor under the domination of another person. See Morgan v. Florida, 515 So.2d 975 (Fla.1987). Although some nonstatutory evidence was introduced it was not mentioned by the judge. See McCrae v. State, 510 So.2d 874, 880 (Fla.1987).
 
 
 16
 The state argues that Armstrong's Lockett claim is subject to the procedural default doctrine of Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because the claim was not presented on direct appeal. Recognizing that the Hitchcock decision represents a substantial change in the law,[7] the Florida Supreme Court has held recently that the procedural default doctrine does not bar a claim for a Lockett violation. See Downs v. Dugger, 514 So.2d 1069, 1072 (Fla. 1987); Thompson v. Dugger, 515 So.2d 173, 175 (Fla. 1987); Riley v. Wainwright, No. 69,563, slip op. at 2 (Fla. Sept. 3, 1987). In the absence of a state procedural bar, we hold that Armstrong's Lockett claim is not subject to the procedural default doctrine. See Magill, 824 F.2d at 891-92 & n. 14.
 
 
 17
 The state concedes that nonstatutory mitigating evidence was presented at the sentencing proceeding,[8] but argues that the Hitchcock error was harmless. The Supreme Court has rejected recently a harmless error contention involving mitigating evidence that was excluded because it was merely cumulative. Skipper, 476 U.S. at ----, 106 S.Ct. at 1672-73;[9] see also Magill, 824 F.2d at 893 ("the introduction of nonstatutory mitigating evidence is meaningless if the jury is instructed not to consider that evidence") (emphasis in original). The Court held that it could not conclude confidently that the excluded evidence would have had no effect on the jury. Skipper, 476 U.S. at ----, 106 S.Ct. at 1673. In light of the testimony presented by Armstrong at the evidentiary hearing in the district court, it is likewise doubtful that the Lockett violation was harmless. It is not necessary that we make such a determination, however, in view of our holding that Armstrong was denied the effective assistance of counsel.[10]
 
 V.
 
 18
 Because petitioner received ineffective assistance of counsel at the sentencing phase, the district court correctly ordered that the writ of habeas corpus issue unless the state affords Armstrong a new sentencing hearing.
 
 
 19
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 The Florida Supreme Court affirmed Armstrong's death sentence. Armstrong v. State, 399 So.2d 953 (Fla.1981). Armstrong was denied collateral relief pursuant to Fla.R.Crim.P. 3.850. The Florida Supreme Court affirmed. Armstrong v. State, 429 So.2d 287 (Fla.1983)
 
 
 [2]
 Trial counsel gave the following testimony at the evidentiary hearing before the district court:
 Q: What did you do to prepare for the penalty phase of the trial assuming it came to that?
 A: Well, we spoke with Mr. Armstrong's parole officer, who was knowledgeable, it seems to me, about his background, and arranged for her to be present to testify on that issue in the penalty phase of the trial. I spoke with Mr. Armstrong about that part of the trial, and during the brief recess between the conclusion of the trial on liability and the trial on punishment, I again spoke with Mr. Armstrong and also his mother and stepfather, I believe, about the same thing.
 ....
 Q: Apart from your consideration with petitioner and his mother and his stepfather and apart from your conversation with his parole officer, did you conduct any other preparation for the penalty phase?
 A: No.
 
 
 [3]
 The trial court's jury instructions followed the language of Florida's death penalty statute in effect at the time. Former section 921.141 provided:
 (2) Advisory sentence by the jury.--After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
 (a) Whether sufficient aggravating circumstances exist as enumerated in subsection (6);
 (b) Whether sufficient mitigating circumstances exist as enumerated in subsection (7), which outweigh the aggravating circumstances found to exist; and
 (c) Based on these considerations, whether the defendant should be sentenced to life [imprisonment] or death.
 ....
 (6) Mitigating circumstances.--Mitigating circumstances shall be the following:
 (a) The defendant has no significant history of prior criminal activity.
 (b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
 (c) The victim was a participant in the defendant's conduct or consented to the act.
 (d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
 (e) The defendant acted under extreme duress or under the substantial domination of another person.
 (f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 (g) The age of the defendant at the time of the crime.
 
 
 [4]
 The Florida statute was amended by the legislature in 1979. This amendment removed the language limiting the mitigating circumstances to the list enumerated in the statute. See Fla.Stat. Sec. 921.141(2)(b), (3)(b) (1985)
 
 
 [5]
 The unanimous Supreme Court stated:
 We think it could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of [Skipper and Lockett ].
 Hitchcock, --- U.S. at ----, 107 S.Ct. at 1824 (citations omitted).
 
 
 [6]
 There may be some question in this circuit whether both the jury and the trial judge must believe they are limited to considering statutory mitigating factors before a Hitchcock violation has occurred. Compare Magill v. Dugger, 824 F.2d 879, 893 (11th Cir.1987) ("whether or not the trial court believed it could consider nonstatutory mitigating circumstances, [petitioner's] sentence must be vacated because the jury was so limited") (emphasis in original) with Elledge v. Dugger, 823 F.2d 1439, 1448-49 (11th Cir.1987) (Hitchcock error does not require reversal when the state trial judge indicates he did not feel he was limited to statutory mitigating factors). Because in this case both the trial judge and the jury believed that they were limited to considering statutory mitigating factors, we do not need to resolve this issue. The Florida Supreme Court, however, recently has clarified Florida law by holding that "the standards imposed by Lockett bind both the judge and the jury under our law.... If the jury's recommendation, upon which the judge must rely, results from an unconstitutional procedure, then the entire sentencing process necessarily is tainted by that procedure." Riley v. Wainwright, No. 69,563 (Fla. Sept. 3, 1987)
 
 
 [7]
 Prior to the Hitchcock opinion, the Florida Supreme Court had held that the mere opportunity to present nonstatutory mitigating evidence was sufficient to meet the standards of Lockett. See, e.g., Echols v. State, 484 So.2d 568, 575-76 (Fla.1985), cert. denied, --- U.S. ----, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986); Hitchcock v. State, 432 So.2d 42, 43 (Fla.1983), rev'd, --- U.S. ----, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)
 
 
 [8]
 The state's brief points out that the Florida Supreme Court "expressly recognized" that nonstatutory mitigating evidence was presented at the sentencing proceeding. See Armstrong v. State, 429 So.2d 287, 290 (Fla.1983)
 
 
 [9]
 Skipper attempted to introduce testimony by two jailers about his good conduct, but the trial court ruled that the testimony was irrelevant and inadmissible. Skipper, 106 S.Ct. at 1670
 
 
 [10]
 Armstrong also contends on cross-appeal that the death penalty in Florida is applied arbitrarily and unlawfully on the basis of race. We do not address this claim. Unlike his argument on this appeal, his petition for federal habeas relief and his Rule 3.850 motion to the state court contend that the death penalty was arbitrarily and capriously applied to him. Petitioner has not exhausted his state remedies with respect to the broader claim. We note that the district court denied Armstrong's request to amend his habeas petition to include this broader claim
 Armstrong's final claim is that he was deprived of due process at trial because Ida Jean Shaw, Armstrong's mother-in-law, testified without a full disclosure to the jury of her immunity arrangements. Armstrong argues that although the jury was informed of Shaw's immunity with respect to a related crime, she was still subject to perjury charges. The record supports the district court's finding that the jury was apprised fully of Ms. Shaw's arrangement with the prosecution. We therefore hold that Ms. Shaw's testimony did not deprive Armstrong of due process.