528 So.2d 361 (1988)
Theodore C. HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 72589.
Supreme Court of Florida.
July 1, 1988.
*362 Daniel L. Rabinowitz and Keith E. Lynott of McCarter & English, Boca Raton, and Newark, N.J., for appellant.
Robert A. Butterworth, Atty. Gen., Charles M. Fahlbusch, Asst. Atty. Gen., and Richard L. Kaplan, Capital Collateral Coordinator, Miami, for appellee.
OVERTON, Justice.
In this postconviction relief proceeding, Theodore C. Harris appeals the denial of his Florida Rule of Criminal Procedure 3.850 motion to vacate his conviction and sentence of death, and also seeks a stay of execution from his death warrant. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the trial court's denial of the requested relief and deny the stay of execution.
This is Harris' first death warrant but his third appearance before this Court. We affirmed his conviction and sentence of death in Harris v. State, 438 So.2d 787 (Fla. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984). As reflected in that decision:
The victim, a seventy-three-year-old woman, was found dead in her home on the morning of Sunday, March 22, 1981. She had died during the night from multiple stab wounds and wounds inflicted by a blunt instrument. A knife, a bloody rock, and a blood-covered wooden chair were found in the house. The autopsy revealed that the victim had suffered numerous defensive wounds on her arms, hands, and shoulders. Blood was spattered over the walls and furnishings of the bedroom, living room, and kitchen, indicating that the victim had tried to escape her assailant while she was being stabbed and beaten.
Id. at 789. At the time of the murder, Harris was living with the victim's grand-daughter in the same neighborhood. He had previously been married to that grand-daughter's sister. Harris had signed a written confession which was fully set forth in our prior opinion. He presented no evidence in his own behalf in the guilt phase of the trial.
During the penalty phase, the state presented evidence that Harris had been previously convicted of robbery and that he was on parole at the time of the murder. At the conclusion of the penalty phase, defense counsel requested a continuance to bring Harris' ex-wife, other family members, and a minister from Jacksonville to testify in Harris' behalf. When the court reconvened, counsel advised the court the ex-wife was hospitalized and he had been unable to contact the minister. As a result of the unavailability of these witnesses, Harris presented no evidence in mitigation during the penalty phase. We affirmed the imposition of the death sentence and agreed that the following aggravating circumstances applied: (1) Harris was under a sentence of imprisonment when he committed the murder; (2) he had previously been convicted of a felony involving violence; (3) the murder was committed while Harris was engaged in committing a robbery or burglary; and (4) the murder was especially heinous, atrocious, and cruel. We rejected the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner, but concluded that the improper finding of this aggravating circumstance did not require a new sentencing proceeding. Id. at 798.
Subsequently, Harris petitioned this Court for a writ of habeas corpus, claiming he was denied effective assistance of counsel during his direct appeal on the grounds his attorneys "failed to adequately challenge the validity of the affidavit of probable cause that supported the warrant for his arrest." Harris v. Wainwright, 473 So.2d 1246, *363 1247 (Fla. 1985). We rejected that claim, noting that Harris was seeking a second review of an issue which was previously raised and expressly addressed by the Court. Further, we found that his counsel was not ineffective and that the allegations did not establish prejudicial appellate counsel deficiencies.
This 3.850 motion raises multiple issues, fifteen of which the trial court rejected because they were "either barred on the grounds of res judicata, collateral estoppel and the law of the case, having previously been ruled upon [by this Court, or that they were] procedurally barred because they were issues which could have and should have been raised on direct appeal but were not and which were not properly preserved by request or objection at trial." The trial court held an evidentiary hearing regarding the ineffective assistance of counsel claims and, in denying relief, concluded that "defense counsel did not commit any deficiency below the standards expected of counsel." In addressing the question of whether Harris was prejudiced because of the failure to present certain testimony, the court concluded that "the testimony of the witnesses heard during this hearing would not, in any way, shape or form, have altered the verdict that the original jury reached."
This appeal addresses principally the claim that trial counsel was ineffective in failing to properly investigate and obtain character evidence through Harris' service and school records and from members of his family and former employers. Harris also claims that his trial counsel was ineffective in the manner in which he argued the case before the jury.
These ineffective assistance of counsel claims are governed by the principles set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining ineffectiveness of counsel, the issue is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 669, 104 S.Ct. at 2055. To reverse a conviction or set aside a death sentence on these grounds, the defendant must show "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Id. Further, "[w]hen a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer  including an appellate court, to the extent it independently reweighs the evidence  would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695, 104 S.Ct. at 2068. The Strickland Court noted that, in answering the question, a court need not first determine whether counsel's performance was deficient before examining whether the claimed deficiency resulted in prejudice to the defendant. We previously explained how the Strickland test is to be applied in Downs v. State, 453 So.2d 1102 (Fla. 1984).
The claim of ineffectiveness presented in Strickland asserted that counsel was deficient in failing to investigate and present character witnesses and obtain a psychiatric report for the defendant. The evidence that was alleged should have been presented in Strickland would have shown that numerous people thought the defendant was generally a good person and that a psychiatrist and psychologist believed he was under considerable emotional stress. The United States Supreme Court rejected this claim, noting that the evidence would not have sufficiently altered the sentencing profile and, because of the aggravating factors, there was no reasonable probability that the omitted evidence would have changed the conclusion.
The claim in Harris' case is similar. He asserts counsel was ineffective for failing to have presented certain mitigating evidence. He argues that, cumulatively, the testimony from relatives and friends which should have been presented would have established that Harris was a kind, decent man dedicated to his family, a warm and loving parent, a good provider, a timid person and not the kind who would ever harm anyone, a regular church-goer, a dependable *364 and trustworthy employee, and a loyal and valued friend.
He also argues that his school and military records should have been presented to the jury to demonstrate, inter alia, that during his service in the army Harris was commended for assisting the Red Cross in a blood drive on one day. He received a commendation letter thanking him and seven other servicemen for assisting the driver in setting up and breaking down the mobile blood unit.
To this evidence the state could respond that when Harris committed this murder, he was burglarizing the home of the grandmother of the woman who had befriended him and given him a place to stay. Further, that his military records show he was undesirably discharged and had been absent without leave on several occasions. Additionally, that evidence would allow the state to present evidence that Harris had been convicted of two prior burglaries and a robbery in which he broke an elderly woman's arm while snatching her purse. These circumstances, coupled with the statutory aggravating circumstances, including the fact that this seventy-three-year-old woman had six stab wounds and forty-one incision wounds caused by a knife and five lacerations caused by a blunt instrument, overwhelm the suggested mitigating evidence. We conclude there is no reasonable probability the omitted mitigating evidence would have affected the jury's recommendation or the sentence imposed by the trial judge. See, e.g., McCrae v. State, 510 So.2d 874 (Fla. 1987); Maxwell v. Wainwright, 490 So.2d 927 (Fla.), cert. denied, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); Porter v. State, 478 So.2d 33 (Fla. 1985). We also reject as without merit the claim that his counsel's argument in the penalty phase was so ineffective that it requires a new sentencing proceeding.
Accordingly, we affirm the trial court's order and deny Harris' application for a stay of execution.
It is so ordered.
McDONALD and GRIMES, JJ., concur.
EHRLICH, C.J., concurs specially with opinion.
SHAW, J., concurs specially with opinion with which EHRLICH, C.J., concurs.
BARKETT, J., dissents with opinion with which KOGAN, J., concurs.
KOGAN, J., dissents with opinion with which BARKETT, J., concurs.
EHRLICH, Chief Justice, specially concurring.
While I concur with the Court's opinion and with the special concurring opinion of Justice Shaw, I would like to express an additional thought or two.
It should be apparent from the reading of the opinions of this Court in death penalty cases that this Court expects the same high standards of professional competence in the preparation for and the conduct of the penalty phase of the trial, as it does in the guilt phase. This is not to say that counsel for a defendant may not exercise a reasonable judgment and decide not to put on any witnesses, or to put on a limited number of witnesses designed to "humanize" the defendant, or at least to show that there is sufficient good in the otherwise tainted character of the defendant that the death penalty would be inappropriate. But, it is elementary that a reasoned judgment cannot be made and options exercised unless and until a complete investigation into the defendant's background and past have been made. I recognize also that counsel has to weigh the good against the bad and decide whether presenting the good side of defendant will outweigh the adverse evidence that may come in by way of cross examination or rebuttal, and that if he feels that under such circumstances it would adversely affect defendant to put on such positive evidence, that he should not do it.
It appears to me that in addition to a complete investigation into defendant's background and character, that it is also necessary to explore the defendant's mind to ascertain if there be present any evidence *365 that would call into play a statutory mitigating factor, or any non-statutory mitigating circumstances.
Since so much time generally elapses between the original trial date and the time of collateral proceedings raising the inevitable charge of ineffective assistance of trial counsel, I think that counsel would be well advised to save his or her file so that when called upon to testify in response to the charge of ineffective assistance, that counsel will not have to depend solely on a memory possibly dulled by the passing of time.
SHAW, Justice, specially concurring.
Although I agree that relief should be denied because appellant has not shown prejudice resulting from the alleged ineffectiveness of counsel, I believe something should be said about counsel's performance. From the testimony of the two defense attorneys at the evidentiary hearing below, it is obvious that both believed that the other was contacting witnesses in preparation for the penalty phase and, consequently, neither was prepared when the penalty phase arrived. Because of this, a continuance was obtained and efforts made to contact witnesses. This lack of attention and preparation reflects inadequate assistance of counsel even if it did not result in constitutional ineffectiveness under the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), prejudice prong.
EHRLICH, C.J., concurs.
BARKETT, Justice, dissenting.
I respectfully but emphatically dissent.
In my view, this case presents a glaring example of prejudicial ineffectiveness. Contrary to what the majority opinion suggests, Harris presented no evidence during the penalty phase not because of the unavailability of witnesses but because his two lawyers, prior to the day the penalty phase began, had not devoted a single hour of their time to preparing for that phase of the trial. And, as the testimony at the evidentiary hearing below made clear, defense counsels' complete and utter failure to investigate, prepare, or present mitigating evidence during the penalty phase was not the result of a reasoned strategic decision but was due to the fact each believed the other was preparing the penalty phase of the trial. The testimony at the hearing below was unequivocal on this point: Both attorneys testified that they erred, that their conduct was below acceptable norms, and that they would have presented the mitigating evidence now brought to light had they known of its existence.
It cannot be denied that such conduct falls far short of Strickland's requirement of reasonably adequate assistance. As the Supreme Court noted in Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104 S.Ct. at 2066. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. In this case, because each counsel believed the other was responsible for the penalty phase, there was no decision not to investigate. Counsels' failure most clearly was not the result of reasoned professional judgement, and, in my view, "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. See also Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985) ("It should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness"), cert. denied, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). Courts have found deficient performance based upon errors less far-reaching than counsels' error in this case. See Tyler v. Kemp, 755 F.2d 741 (11th Cir.1985); Armstrong v. Dugger, 833 F.2d 1430 (11th Cir.1987); King v. Strickland, 748 F.2d 1462 (11th Cir.1984), cert. denied, *366 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985).
Turning to the second prong of the Strickland test, I cannot agree that Harris was not prejudiced by his counsels' deficient performance. My reasons are three-fold: first, without hearing any evidence in mitigation whatsoever during the penalty phase, four of the twelve jurors voted for life imprisonment.
Second, the circumstances of the murder in this case differ markedly from those in Strickland. In Strickland, the defendant planned and committed a series of crimes, which included three brutal stabbing murders, torture, kidnapping, severe assaults, attempted murders, attempted extortion, and theft. 466 U.S. at 671-72, 104 S.Ct. at 2056. Furthermore, the defendant in Strickland confessed and pleaded guilty to all charges, then waived his right both to a jury trial and a penalty phase advisory jury. Id.
In contrast, the murder here was not planned but resulted from a burglary gone awry. The evidence indicates that Harris entered the victim's house believing it to be unoccupied and was surprised by the victim. In the ensuing struggle, the victim was killed and Harris himself injured. Under such circumstances, I believe there is a reasonable probability that character testimony might have affected the outcome.
Third, I do not agree that because the state may have sought to introduce evidence of prior bad acts by Harris, Harris was not prejudiced by the absence of the character evidence. Harris stood convicted of the stabbing murder of an elderly woman. The jury already knew he was on parole at the time. Thus, the jury was aware of much that was damaging to Harris. The testimony of his family and friends, however, would have presented another side to Mr. Harris' character, demonstrating that he was not totally reprehensible and, even in prison, his life could serve some useful purpose. Rehabilitative potential unquestionably is valid mitigating evidence. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); McCampbell v. State, 421 So.2d 1072, 1075-76 (Fla. 1982). Regardless of how any particular individual might weigh this testimony, it clearly is the type of mitigating evidence that might persuade a jury that death is not the appropriate penalty. Juries have recommended life sentences under similar circumstances. See, e.g., Holsworth v. State, 522 So.2d 348 (Fla. 1988).
I also believe that this case involves more than a mere weighing by this Court of the aggravating and mitigating circumstances. As the Court admonished in Strickland, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." 466 U.S. at 696, 104 S.Ct. at 2069. Because his lawyers abdicated their responsibility to investigate or prepare mitigating evidence, Harris received virtually no defense at all in the penalty phase of his trial. Although counsel presented a closing argument at the penalty phase, counsel may well have done Harris more harm than good by arguing, falsely, to the jury that Harris' family had turned against him, since jurors may have interpreted this to mean he was irredeemable.
A death sentence imposed where counsel's representation amounts to practically no representation at all does not comport with the eighth amendment's requirement of reliability in capital sentencing. As the Supreme Court relentlessly has emphasized in its capital decisions, one of the key aspects of the penalty phase proceeding is that the sentence be individualized. Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1976); Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). As the Court noted in Woodson v. North Carolina, 428 U.S. 280, 298, 96 S.Ct. 2978, 2988, 49 L.Ed.2d 944 (1976) (quoting Furman v. Georgia, 408 U.S. 238, 402, 92 S.Ct. 2726, 2810, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting)), "individual culpability is not always measured by the category of the crime committed." For this reason, the death penalty may not be imposed without some "particularized consideration of relevant aspects of the character and record of each convicted defendant." 428 U.S. at 303, 96 *367 S.Ct. at 2991 (plurality opinion). In this case, counsel failed to provide the jury with the information it needed to focus properly on the individualized characteristics of this appellant. See Armstrong, 833 F.2d at 1433.
Accordingly, I conclude that confidence in the outcome has been undermined, and I would vacate the death sentence and grant appellant a new sentencing proceeding.
KOGAN, J., concurs.
KOGAN, Justice, dissenting.
I concur with Justice Barkett's dissenting opinion.
I would further point out that during his closing argument to the jury, appellant's trial counsel stated the following:
I am not going to tell you  to stand here and talk to you about proof, what's been reasonable doubt, but I ask you to consider that Theodore Harris sits there and he's the only person that stands behind him when you think about the fact that his family has turned against him because of this act. He's always  and they have been against him since then. Mr. Darby [Assistant State Attorney] asked  who comes in here to speak for him? Think about that. They don't want to be against him. They don't want to be for him.
This assertion, as the testimony of the witnesses at the 3.850 hearing demonstrated, was incorrect. Appellant's family and friends were not present at trial to testify on his behalf because counsel failed to properly prepare for the penalty phase portion of the trial.
Not only was appellant deprived of his right to present friendly witnesses on his behalf, but his own counsel inferred that the act for which appellant was convicted was so offensive that his family turned against him and would not appear in court to testify. There can be no question that counsel's statement severely damaged any chance appellant had for a recommendation of life imprisonment. This ineffective assistance of counsel was highly prejudicial to appellant.
I would vacate the sentence of death and remand this matter for a new sentencing proceeding before a new jury.
BARKETT, J., concurs.