**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Steven Allen SIMMONS, Defendant–
Appellant.**

No. 91–5202.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1992.

Kenneth M. Swartz, Brenda G. Bryn, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Linda Collins Hertz, Kathleen M. Salyer, Edward R. Ryan, Asst. U.S. Attys., for plaintiff-appellee.

Before HATCHETT, Circuit Judge, JOHNSON * and HENDERSON, Senior Circuit Judges.

PER CURIAM:

This case arises on appeal following the conviction and sentencing of defendant-appellant Steven Allen Simmons.

## I. STATEMENT OF THE CASE

On October 31, 1989, City of Miami Police Officer Kelvin Knowles apprehended Steven Allen Simmons, whom Knowles had earlier observed clutching a brown paper bag. Knowles examined the bag and discovered that it contained a loaded firearm. After Knowles advised Simmons of his *Miranda* rights, Simmons asked the officer for "a break," and stated that he could not "stand a pistol charge." Simmons was arrested and incident to booking was found to have prior convictions for violent felonies.

On January 4, 1990, a federal grand jury returned a one-count indictment charging Simmons with possession of a firearm by a convicted felon, in violation of 18 U.S.C.A. §§ 922(g)(1), 924(a)(2), and 924(e) (West Supp.1992). A jury convicted Simmons on June 29, 1990. Pursuant to the Armed Career Criminal Act, the district court on February 22, 1991 sentenced Simmons to fifteen years imprisonment and three years

of supervised release. *See* 18 U.S.C.A. § 924(e).

## II. ANALYSIS

Simmons raises the following two principal claims on appeal: (1) the district court committed plain error by failing to excuse, *sua sponte*, certain jurors for cause, and (2) the district court considered convictions resulting from a constitutionally invalid guilty plea as predicate convictions when sentencing Simmons under the Armed Career Criminal Act. For the following reasons, we conclude that neither of these claims has merit. We therefore affirm Simmons' conviction.

### A. *Excusing jurors sua sponte*

Simmons claims that four jurors—Dorothy White, Mary Floyd, Josephina Garcia, and Alejandro Gonzalez—displayed bias and partiality in the course of voir dire and, therefore, should have been excused by the district court *sua sponte* for cause. Simmons argues that the district court's failure to excuse those jurors for cause, notwithstanding Simmons' failure to challenge the jurors either for cause or peremptorily, deprived him of his Sixth Amendment right to an impartial jury.

The constitutional standard for juror impartiality is whether the juror "can lay aside his opinion and render a verdict based on the evidence presented in court." *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2892 n. 12, 81 L.Ed.2d 847 (1984). Evaluation of bias involves assessing a juror's credibility and "therefore[ ] his or her demeanor." *Depree v. Thomas*, 946 F.2d 784, 790 n. 12 (11th Cir.1991). "Accordingly, it is generally proper for a reviewing court, which must rely on a cold record, to defer to the conclusions reached by the trial judge on this issue." *Id.; see United States v. Nash*, 910 F.2d 749, 753 (11th Cir.1990). If an objection is timely raised below, this Court reviews the determination of the district court for "manifest abuse of discretion." *United States v. Muller*, 698 F.2d 442, 444 (11th Cir.1983).

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

■ In the instant case, Simmons failed to object during the lower court proceedings. We must therefore grant the lower court's finding of impartiality still greater deference under the plain error doctrine:

> Plain errors are those seriously affecting the 'fairness, integrity, or public reputation of judicial proceedings.' Furthermore, the error must be both obvious and substantial. [Plain error is found] in exceptional circumstances where needed to prevent a miscarriage of justice.

*United States v. Solomon,* 856 F.2d 1572, 1575 (11th Cir.1988) (quoting *United States v. Fernandez,* 496 F.2d 1294, 1297 (5th Cir.1974)); *see* Fed.R.Crim.P. 52(b).[1]

■ The district court in its voir dire properly instructed the jury regarding the law of proof and burden involved in criminal cases. The district court first asked the panel as a whole whether they would agree to hold the government to its burden of proof beyond a reasonable doubt, and all jurors agreed. The venire also agreed to give the appellant the presumption of innocence. The court then asked:

> Is there anybody here who can't give the defendant the presumption of innocence and give it to him throughout the trial until such time as the government proves guilt beyond a reasonable doubt, if the

government can do that? Anybody feel they can't do that?

No venire person responded that he or she would not "do that." The court then followed with an explanation of why "[o]ur law does not require anybody to defend themselves." When the court asked if anyone would consider whether the defendant testified or not as a factor in deciding guilt or innocence, no juror indicated a difficulty. When, however, the court asked whether any juror would be swayed if the defendant *neither* testified himself *nor* called *any* witnesses, two jurors equivocated. Dorothy White stated she "didn't think" she could ignore the fact that no defense was presented. Mary Floyd initially stated that her position would "depend on the evidence" offered by the prosecution, and then stated that she would have "a little" problem if the defendant did not testify or offer witnesses. Josephina Garcia next indicated that she might be troubled. The court did not immediately attempt to rehabilitate Garcia's answer. Later, Alejandro Gonzalez responded that he would "tend to believe" the testimony of a police officer if faced with conflicting accounts offered by a police officer and a lay witness.

At the close of the court's voir dire, the court again addressed the panel as a whole:

---

1. Simmons erroneously cites several Supreme Court cases for the proposition that the right to an impartial adjudicator is not subject to plain error analysis. *See, e.g., Gray v. Mississippi,* 481 U.S. 648, 668, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622 (1987); *Vasquez v. Hillery,* 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986). Initially, we note that this Court has never found that a potentially substantial claim raised for the first time on appeal justifies forsaking plain error review. This Court applies the plain error rule whenever a party has failed to bring the error to the attention of the district court. *See United States v. Walther,* 867 F.2d 1334, 1343 (11th Cir.1989); *United States v. Sorondo,* 845 F.2d 945, 949 (11th Cir.1988).

Simmons cites cases that in essence hold only that the right to an impartial adjudicator is so fundamental to a fair trial that "its infraction can never be treated as harmless error." *See Gray,* 481 U.S. at 668, 107 S.Ct. at 2057 (emphasis added). The harmless error rule functions only to select for those constitutional errors that "contribute[ ] to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17

L.Ed.2d 705 (1967). In *Gray* and *Vasquez,* the Supreme Court held that because jury bias invariably contributes to the conviction, application of the harmless error rule to a finding of jury bias is unjustified. *See Gray,* 481 U.S. at 667–68, 107 S.Ct. at 2056–57; *Vasquez,* 474 U.S. at 263–64, 106 S.Ct. at 623–24.

The plain error rule, however, differs from the harmless error rule in both purpose and scope. Unlike the harmless error rule, the plain error rule serves "to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." *Sorondo,* 845 F.2d at 948–49 (quoting *United States v. Chaney,* 662 F.2d 1148, 1151 n. 4 (5th Cir.1981)). Consequently, proof of a plain error involves not only a showing of harm, but also proof that the error was so conspicuous that the "judge and prosecutor were derelict in countenancing it." *United States v. Bonavia,* 927 F.2d 565, 570 (11th Cir. 1991). An error that is not harmless, then, is not necessarily a plain error. *See United States v. McKinney,* 954 F.2d 471, 475 (7th Cir.1992).

If you were selected to sit on this jury, after hearing the evidence I will instruct you *on the law that you must follow and apply* in deciding the case, and *I will instruct you that you must follow that law whether you agree with it or not.*

I wonder if that's going to be a problem for anybody, if they think this is a bad law or don't agree with that law? The laws are the laws of Congress that have been enacted by Congress. Would you be able to apply that if you just kind of philosophically disagreed with the law? Anybody feel that would be a problem for them?

The court therefore revisited the issue of whether the prospective jurors could follow "the law" that had been carefully and thoroughly explained to the panel earlier. No member of the venire indicated that he or she would have any difficulty. We find that this final colloquy with the potential jurors established an indication of impartiality such that the error in not *sua sponte* removing the jurors, if any error existed at all, was not so conspicuous that the "judge and prosecutor were derelict in countenancing it." *Bonavia*, 927 F.2d at 570; *cf. Bundy v. Dugger*, 850 F.2d 1402, 1428 (11th Cir.1988) (court may find "firm indication of impartiality" despite earlier equivocations by jurors about how they might evaluate evidence).

■ In addition, defense counsel appears to have been following the voir dire closely and using his strikes selectively. Although defense counsel did not strike any jurors for cause, counsel proceeded to use eight peremptory strikes. At one point, defense counsel objected that the government had been striking primarily black jurors. At the conclusion of the voir dire, defense counsel had two remaining peremptory strikes but declined to use them. This decision not to use his remaining peremptory strikes may well have been a strategic decision to retain the four jurors in question. *See Tafero v. Wainwright*, 796 F.2d 1314, 1321 (11th Cir.1986) (counsel may make strategic decision to waive change of venue due to possible jury prejudice).[2]

Given the final colloquy and the strong possibility of a strategic decision by defense counsel, any error by the lower court is clearly not "obvious." *See Sorondo*, 845 F.2d at 948–49. Simmons is therefore not entitled to relief on this claim.[3]

B. *Predicate felonies derived from constitutionally valid plea*

■ Simmons challenges the enhancement of his sentence under 18 U.S.C.A. § 924(e) (West Supp.1992). Section 924(e) provides that felons convicted of possessing firearms in violation of 18 U.S.C.A. § 922(g), who also have three prior convictions for "violent felonies" or "serious drug offenses," are subject to incarceration for fifteen years to life. On January 24, 1980, Simmons pled guilty in state court to

2. Simmons alternatively argues that he was deprived of his right to effective assistance of counsel because his trial counsel failed to strike jurors White, Floyd, Garcia and Gonzalez for cause. A defendant is precluded from raising ineffective assistance of counsel claims for the first time on direct appeal unless there has been "an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *U.S. v. Hilliard*, 752 F.2d 578, 580 (11th Cir.1985). Although a transcribed record of the voir dire exists, the possibility that defense counsel may have waived its objections for reasons of strategy cannot be adequately assessed from this transcript alone. This claim should therefore be raised (if at all) in a collateral attack in district court pursuant to 28 U.S.C.A. § 2255 (West 1971). *See Hilliard*, 752 F.2d at 580.

3. Simmons claims that the district court also erred by (1) allowing the government to present rebuttal testimony, (2) allowing an officer to testify about his personal experience with fingerprint detection, and (3) not declaring a mistrial based on the prosecution's single mention of Simmons' previous convictions, instead of "conviction" as agreed by stipulation. Conceding that none of the errors is separately cognizable, Simmons argues only that the errors together "fueled" the biases of the four jurors at issue. Aside from the fact that Simmons is reduced to merely speculating about how these "errors" may have inflamed the biases of the jurors, this argument has no bearing on the question of whether the alleged bias of the jurors was "so conspicuous" to the trial court *during voir dire* that the court was remiss in allowing the four jurors to serve. *See Bonavia*, 927 F.2d at 570.

a series of violent crimes committed during a two week period in 1974. Having spent the intervening years from 1974 to 1980 in a mental institution, Simmons was declared competent to stand trial six months prior to pleading guilty. Simmons contends that the predicate offenses the government relied upon in seeking the enhancement were not constitutionally valid because he had not been sufficiently apprised of the consequences of his guilty plea in 1980. Specifically, Simmons argues that his long history of mental illness and the possibility of lingering effects required the state trial court to take the extraordinary steps of securing his express waiver of all three *"Boykin* rights": his right to a jury trial, his right to confront adverse witnesses, and his privilege against self-incrimination. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). This argument is without merit.

The *Boykin* Court held that a silent record does not reflect that the defendant made a knowing and intelligent waiver of his right to trial, his right against compulsory self-incrimination and his right to confront his accusers. *See id.* This Circuit, however, has construed *Boykin* to require only that courts establish a record that generally "reveals affirmative awareness of the 'consequences' of a guilty plea." *United States v. Frontero,* 452 F.2d 406, 415 (5th Cir.1971). Specifically, a trial court may sufficiently apprise a defendant of the consequences of his plea without obtaining express waivers of his right to confront adverse witnesses and his right against compulsory self-incrimination. *Id.*

Simmons has not provided this Court with any legal basis for holding that the state trial court was required to secure Simmons' express waiver of all three of his *Boykin* rights. As noted above, Simmons was declared competent to stand trial six months prior to his plea of guilty. A defendant competent to stand trial is one who " 'has sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding—and [one who] has a rational as well as factual understanding of the proceedings against him [or her].' " *Tiller v. Esposito,* 911 F.2d 575, 576 (11th Cir.1990) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). This standard of mental competency is the same as that required for entering a guilty plea. *Id.; Malinauskas v. United States,* 505 F.2d 649, 654 (5th Cir.1974). Simmons counters that both discharging psychiatrists stated that he continued to suffer amnesia as to the facts underlying the offenses with which he was charged, and that one psychiatrist believed that Simmons had a limited ability to reason "abstractly and discriminately." Simmons does not, however, challenge the judicial determination of his mental competence to enter a guilty plea. Because by definition Simmons possessed a "reasonable degree of rational understanding" and had a rational and factual understanding of the proceedings, there is no indication that the concerns of the psychiatrists were related to his ability to comprehend—through a routine plea colloquy—the consequences of entering a guilty plea.

Simmons' behavior and responses during his plea colloquy likewise did not provide the trial court with reason to suspect that he did not understand the court's thorough explanation of the consequences of pleading guilty. The trial court determined that Simmons had discussed with counsel the option of pursuing various defenses,[4] and

---

**4.** Simmons argues that the trial court erred by not specifically inquiring as to why he no longer wished to pursue his insanity defense. A trial court, however, is not constitutionally required to pursue with defendant all possible defenses in order to adequately inform defendant of the consequences of his plea. *See Dismuke v. United States,* 864 F.2d 106, 107 (11th Cir.1989).

Because Simmons' decision not to further pursue his insanity defense was not sudden or ill-considered, he provided little reason for fur-

ther specific inquiry by the trial court. *See Malinauskas,* 505 F.2d at 654. Although he originally filed an insanity defense in 1974, over six months had passed from the time he was deemed mentally competent in 1979 to the date that he entered his plea of guilty. Indeed, the federal district court found that Simmons' counsel likely urged Simmons to drop the insanity defense because of the high likelihood of its failure and the attractiveness of the plea bargain.

that Simmons understood that he was forfeiting his right to trial. Throughout the proceedings, Simmons carefully responded to each of the trial court's questions, answering "yes" and "no" when appropriate, and qualifying his answers when necessary. *See United States v. Ruo,* 943 F.2d 1274, 1277 (11th Cir.1991). Simmons' lucid responses were thus in accordance with the psychiatric diagnoses that found him capable of factually and rationally understanding the proceedings against him.

Nonetheless, the trial court did not merely inform Simmons of the sentencing range for the proposed plea. The court instead described *precisely* the sentence that Simmons would serve if he decided to enter a guilty plea. By ascertaining that Simmons understood the terms of the sentence he would receive, the trial court ensured that the defendant was fully apprised of the most significant consequence of his guilty plea. *See Coleman v. Alabama,* 827 F.2d 1469, 1473 (11th Cir.1987). Because the trial court took adequate precautions to ensure that Simmons was entering his guilty plea with " 'sufficient awareness of the relevant circumstances and likely consequences,' " *Miller v. Turner,* 658 F.2d 348, 351 (5th Cir.1981) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)), we find that a further *Boykin* inquiry was not warranted.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is therefore AFFIRMED.