[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14115
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20349-UU-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERNANDO VICENTE MARULANDA TRUJILLO,
a.k.a. Marulo,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 22, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Fernando V. Marulanda Trujillo ("Marulanda") appeals his conviction and 210-month sentence for conspiracy to distribute cocaine knowing that it would be imported into the United States, in violation of 21 U.S.C. §§ 959(a)(2), 960(b)(1)(B), and 963.  After review, we affirm Marulanda's conviction and dismiss Marulanda's appeal of his sentence based on the sentence-appeal waiver in his plea agreement.

## I.  GUILTY PLEA

### A.    Plain Error Review

On appeal, Marulanda argues that the district court erred in accepting his guilty plea.  Because Marulanda did not raise any plea issues in the district court by either objecting or moving to withdraw his guilty plea, our review is for plain error.  See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).

Under plain error review, the defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights."  Id.  If these three conditions are met, we may exercise our discretion and correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation marks omitted and alteration adopted).  To show that an unpreserved Rule 11 error affects substantial rights, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea."  United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004); see also United States v.

2

Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (explaining that the Dominguez Benitez Court's "affected the outcome" requirement is a way to show the third prong of the plain error test).  Moreover, in evaluating whether there was error and whether it affected substantial rights, "we may consider the whole record, not just the plea colloquy."  Moriarty, 429 F.3d at 1020 n.4.

**B.      Marulanda's Rule 11(b)(1)(G) Claim–Understanding the Charge**

Marulanda first contends that his guilty plea was invalid because the district court failed to ensure that Marulanda understood the charge, as required by Federal Rule of Criminal Procedure 11(b)(1)(G), and, in particular, the knowledge element of his offense.  See Fed. R. Crim. P. 11(b)(1)(G) (requiring the district court to address the defendant in open court and determine whether he understands the nature of the charge).  Marulanda's argument focuses solely on the second "core concern" of Rule 11, whether the defendant understands the nature of the charge. See United States v. Jones, 143 F.3d 1417, 1418 (11th Cir. 1998) (explaining that in accepting a guilty plea, the district court must address Rule 11's three core concerns).

Marulanda was charged with, and pled guilty to, participating in a cocaine distribution conspiracy under 21 U.S.C. §§ 963 and 959(a)(2).  A defendant violates § 963 when he conspires to commit a drug import or export offense in Title 21, Chapter 13, Subchapter II of the U.S. Code, which includes offenses in

3

§ 959. 21 U.S.C. § 963. To establish a violation of § 963, the government must prove "an agreement by two or more persons to violate the narcotics laws." United States v. Elledge, 723 F.2d 864, 865 (11th Cir. 1984). However, unlike other conspiracy offenses, "the government need not prove an overt act in furtherance of a conspiracy under . . . § 963 (conspiracy to import)." Id. at 866. Rather, the government need only prove "that a conspiracy existed, that each defendant knew at least the essential objectives of the conspiracy, and that each defendant voluntarily participated in it." Id.

Under § 959, it is unlawful "to manufacture or distribute a controlled substance . . . (1) intending that such substance or chemical will be unlawfully imported into the United States . . . ; or (2) knowing that such substance or chemical will be unlawfully imported into the United States . . . ." 21 U.S.C. § 959(a)(1)-(2) (emphasis added). Marulanda was charged with conspiring with persons known and unknown to violate § 959(a)(2); that is, with conspiring to distribute a controlled substance, knowing that it would be unlawfully imported to the United States. During the plea colloquy, however, the district court inaccurately stated several times that the government was required to prove that Marulanda "knew or intended" that the cocaine would be imported to the United States, thus referencing both § 959(a)(1) and (a)(2).

4

Nonetheless, we conclude that the district court did not plainly err in accepting Marulanda's guilty plea because the "knowing" element of § 959(a)(2) was referenced in (1) Marulanda's plea agreement, (2) the government's factual proffer, and (3) Marulanda's own sworn statements during the plea colloquy. That record as a whole contains ample evidence from which the district court reasonably could conclude that Marulanda understood that he was pleading guilty to conspiring to distribute cocaine "knowing" that the cocaine would be unlawfully imported into the United States and was in fact guilty of that offense. See United States v. Lopez, 907 F.3d 1096, 1099 (11th Cir. 1990) (explaining that we will affirm "if the record provides a basis for the court's finding that the defendant understood what he was admitting and that what he was admitting constituted the crime charged").

For example, in his written plea agreement, Marulanda agreed to plead guilty to "conspiring to distribute five (5) kilograms or more of cocaine, knowing that such substance would be unlawfully imported into the United States." (Emphasis added.) In determining whether the Rule 11 colloquy was satisfied, we can look at the terms of the plea agreement. See Jones, 143 F.3d at 1420.

Similarly, during the plea colloquy, Marulanda, who was under oath, agreed that he had "a full opportunity" to discuss with his attorney both the indictment and the written plea agreement. Both documents indicated that Marulanda's

conspiracy-to-distribute offense involved "<u>knowing</u>" that the cocaine would be imported into the United States.  Marulanda also stated that he understood the charge and the plea agreement.  The district court then reviewed the plea agreement with Marulanda, stating, <u>inter alia</u>, that Marulanda agreed to plead guilty to conspiring to distribute "<u>knowing</u> that the cocaine would be unlawfully imported into the United States . . . ."  (Emphasis added.)  When the district court asked Marulanda whether there were any terms of the plea agreement he did not understand, Marulanda responded, "No.  It's all clear to me."

Likewise, the government's factual proffer also referenced the knowing element of § 959(a)(2), and Marulanda listened to and agreed with that proffer.  Specifically, the government stated that at trial it could have proved that "during the time frame of the charged conspiracy," i.e., between 2006 and December 31, 2010: (1) Marulanda participated as an investor in at least one load of over 150 kilograms of cocaine that was sent via a container ship from Venezuela to Mexico, where it was sold; (2) he received his portion of the profits in U.S. currency; and (3) most importantly, "Marulanda <u>knew</u> that this load was ultimately imported into the United States."  (Emphasis added.)

Furthermore, the government noted that the "proffer [did] not contain all evidence known to the United States regarding Marulanda's criminal activities but [was] sufficient to establish that Marulanda committed the crime of conspiracy to

distribute cocaine <u>knowing</u> that it would be unlawfully imported into the United States." (Emphasis added.) During follow-up questioning by the district court, the government stated, <u>inter alia</u>, that "witnesses would have testified they all knew the cocaine – there is no market for a load of cocaine of that size in Mexico. They all knew that the fact that they were receiving United States currency back as part of the transaction as opposed to some other currency and the fact that they all understood that the cocaine was thereafter being sold from Mexico and then shipped on by other people to the United States." At the end of the factual proffer, the district court asked Marulanda if he agreed with those facts, and Marulanda said, "Correct."[1]

In short, Marulanda said at his plea hearing (1) that he understood that he was charged with and was pleading guilty to participating in a cocaine distribution conspiracy in which he knew that the cocaine would be unlawfully imported into the United States, and (2) that he and the other investors in fact knew that the cocaine they sold in Mexico was ultimately destined for the United States; (3) during the conspiracy period.

---

[1]The government's proffer, to which Marulanda agreed, stated that the government could prove that all of the recited facts occurred during the conspiracy period. Thus, there is no merit to Marulanda's argument in his reply brief that the government's proffer did not establish that the cocaine distribution in Mexico or Marulanda's knowledge that the cocaine was destined for the United States occurred during the conspiracy period.

There is a strong presumption that a defendant's statements made during a plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Marulanda has presented no evidence to suggest that his statements during the plea colloquy were false. The record as a whole reflects that Marulanda understood that he was pleading guilty to conspiring to distribute cocaine "knowing" that the cocaine would be unlawfully imported into the United States and that Marulanda's admitted conduct constituted the crime charged. See Lopez, 907 F.2d at 1099. Thus, even if the district court's misstatements about the knowledge element of the offense technically violated Rule 11(b)(1)(G), the record as a whole indicates that Marulanda understood the nature of the charge and that the second core concern was adequately addressed. See United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003) (explaining that we will uphold a plea colloquy that violates an explicit Rule 11 requirement so long as the "overall plea colloquy" adequately addresses the three core concerns).

## C.    Marulanda's Rule 11(b)(3) Claim–Factual Basis for the Plea

Marulanda also contends that the government's factual proffer was insufficient to support a finding that he was guilty of the offense. See Fed. R. Crim. P. 11(b)(3) (requiring that the district court, before entering a judgment on a guilty plea, "determine that there is a factual basis for the plea"); United States v. Frye, 402 F.3d 1123, 1128 (11th Cir. 2005) ( "The standard for evaluating

8

challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." (quotation marks omitted)).

The record as a whole contains ample evidence from which the district court reasonably could conclude that there was a factual basis for the plea and that Marulanda was in fact guilty of conspiring to violate § 959(a)(2).  See id. Marulanda agreed with the government's proffer that during the conspiracy period, he participated as an investor in at least one load of over 150 kilograms of cocaine that was shipped from Venezuela to Mexico, where it was sold to others, and that Marulanda and the other investors knew that the cocaine they sold in Mexico would ultimately be imported into the United States.  Given that Marulanda did not dispute the government's proffer, the district court had no reason to question the sufficiency of the evidence as to Marulanda's conduct or his knowledge.  As such, it was not plain error to conclude that there was a sufficient factual basis for the guilty plea.

**D.    Marulanda's Statute of Limitations Argument**

Marulanda also argues that (1) the district court failed to adequately explain how the elements of his drug conspiracy offense relate to the applicable statute of limitations, and (2) the government's factual proffer did not establish that "the elements of the offense were committed within the 5-year limitations period."  See

United States v. Butler, 792 F.2d 1528, 1531 (11th Cir. 1986) (applying the five-year limitations period in 18 U.S.C. § 3282 to a 21 U.C.S. § 963 conspiracy).  All but four months of the charged conspiracy period falls within the limitations period.  Nevertheless, Marulanda argues that his indictment was filed on May 19, 2011, and that if the cocaine shipment was sold in Mexico at the beginning of the conspiracy period in early 2006, the sale would have occurred outside of the limitations period.

The first problem for Marulanda is that the government was not required to prove overt acts in furtherance of the conspiracy to obtain a conviction under 21 U.S.C. § 963.  Elledge, 723 F.2d at 866.  Further, for a § 963 offense, the indictment need not even allege an overt act within the applicable five-year limitations period.  Butler, 792 F.2d at 1532.  Instead, for a § 963 offense, "the indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period."  Id. (emphasis added).

Marulanda's indictment charged a conspiracy continuing until on or about December 31, 2010.  Thus, the conspiracy continued well into the five-year limitations period.  And, Marulanda admitted at his plea colloquy to facts establishing that he participated in the conspiracy by investing in the Mexico shipment "during the time frame of the charged conspiracy."  Thus the

10

government's proffer was sufficient to support a finding that the conspiracy

Marulanda participated in continued into the five-year limitations period and that

the indictment was timely.

Moreover, Rule 11 requires the district court to ensure the defendant

understands the nature of the charge and the consequences of pleading guilty, but it

does not require the district court also to advise the defendant of possible defenses

to the charge.  See United States v. Simmons, 961 F.2d 183, 187 n.4 (11th Cir.

1992) (rejecting argument that the defendant's plea was invalid due to the trial

court's failure to inquire about a possible insanity defense because "[a] trial court .

. . is not constitutionally required to pursue with defendant all possible defenses in

order to adequately inform the defendant of the consequences of his plea");

Dismuke v. United States, 864 F.2d 106, 107 (11th Cir. 1989) (concluding that a

district court's failure to advise the defendant during the colloquy that he could

raise a "good faith" defense if he proceeded to trial did not violate Rule 11 because

"[n]othing in Rule 11 requires the trial judge to inform the defendant of every

possible defense he may have").[2]  Therefore, it was not plain error for the district

court to fail to discuss the statute of limitations with Marulanda.

### E.    Prejudice

---

[2]We note that during the plea colloquy the district court did inquire whether Marulanda had "a full opportunity to discuss the charges in the indictment and [his] case in general, including any defenses [he] might have with [his] attorney," and Marulanda stated, "That is correct."

11

Finally, even assuming Marulanda had shown plain error with respect to the plea colloquy, Marulanda has not met his burden to show prejudice. To establish prejudice, Marulanda needed to show a reasonable probability that, but for the district court's alleged Rule 11 errors, he would not have entered a guilty plea. See Dominguez Benitez, 542 U.S. at 83, 124 S. Ct. at 2336. On appeal, Marulanda does not claim, much less prove, that if the district court had properly stated the knowledge element of the offense, had explained the applicability of the statute of limitations, or had inquired further into the factual basis for his plea, Marulanda would not have entered his guilty plea and would have proceeded to trial. In the district court proceedings, Marulanda never expressed any confusion about the elements of the offense or any hesitation about whether he was guilty of the offense as charged in the indictment and outlined in the government's proffer.

Rather than directing us to aspects of his plea colloquy, Marulanda argues that disputes during his sentencing hearing demonstrate prejudice. To the contrary, at sentencing Marulanda never gave any indication that he did not understand the offense or the elements of the offense to which he had pled guilty or that he was anything other than guilty of the charged conspiracy and of the specific conduct alleged in the government's factual proffer. First, Marulanda did not object to the factual statements in the Presentence Investigation Report ("PSI") that (1) he "participated as an investor in at least one load of cocaine sent from Venezuela to

12

Mexico in a cargo container" sometime "between 2006 and December 31, 2010";
(2) the load of cocaine consisted of more than 500 kilograms of cocaine, which
was then sold in Mexico for U.S. currency; and (3) Marulanda was aware that the
cocaine would be distributed in the United States.

Second, at the sentencing hearing, Marulanda, through counsel, reiterated
that he was guilty of the conduct charged in the indictment, recited in the
government's factual basis for the plea and alleged in the PSI, as follows:

> The indictment that he was charged with and the conduct that
> he pled guilty to and the factual basis that [the district court] accepted
> the plea upon related to conduct that occurred between 2006 and 2010
> and involved, according to paragraph 11 [of the PSI], loads that came
> through Venezuela to Mexico in cargo containers and that he received
> a portion of profits from that, and he has admitted to doing all of that.

The offense conduct was never in dispute at Marulanda's plea hearing or his
sentencing.

Rather, the disputes to which Marulanda refers involved other, unrelated
conduct implicated by Marulanda's unsuccessful request for safety-valve relief.
Specifically, the parties disputed whether Marulanda had been fully truthful about
(1) his involvement with another drug trafficker who had made cocaine shipments
to Africa and the Dominican Republic and (2) whether Marulanda owned a cattle
farm in Colombia. Throughout the sentencing, however, Marulanda repeatedly
maintained that he was not contesting his involvement in the cocaine shipment to
Mexico cited in the government's proffer and the PSI. Marulanda also admitted

13

that he had been a significant and prolific drug trafficker for many years. Indeed, in his written safety-valve proffer, Marulanda stated that he had trafficked cocaine for decades, primarily investing with other partners in shipments from Colombia to the Caribbean, but also participating in drug trafficking in Venezuela, and that he had known that these cocaine shipments also were "eventually destined for the United States."

Marulanda's position at sentencing—that he was guilty of the conduct charged in the indictment and recited in the government's proffer and the PSI and that he was a significant and experienced drug trafficker who had long known that the cocaine shipments in which he invested were eventually going to the United States—does nothing to suggest that, but for the alleged plea colloquy errors, he would have proceeded to trial. Thus, even if the district court plainly erred in accepting Marulanda's guilty plea, Marulanda has not shown a reasonable probability that, but for the error, he would not have pled guilty.

## II.  SENTENCING CLAIMS

Marulanda argues that the district court erred at sentencing by denying his request for safety-valve relief and by imposing a sentence based on a drug quantity that the government failed to show was distributed within the applicable five-year limitations period. The government responds, and we agree, that Marulanda's

14

sentencing claims are barred by the sentence-appeal waiver in his written plea agreement.[3]

In his plea agreement, Marulanda waived his right to appeal his sentence "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing," or "if the United States appeals [Marulanda's] sentence."  None of the circumstances under which Marulanda reserved his right to appeal his sentence has occurred.  Marulanda's 210-month sentence does not exceed the statutory maximum of life imprisonment under 21 U.S.C. § 960(b)(1)(B) or his advisory guidelines range of 168 to 210 months' imprisonment and was not the result of either an upward departure or upward variance.  The government has not appealed Marulanda's sentence.  Therefore, if enforceable, Marulanda's sentence-appeal waiver precludes review of his sentencing claims.

A waiver of the right to appeal that is knowing and voluntary will be enforced "if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance

---

[3]We review the validity of a sentence-appeal waiver de novo.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).

of the waiver." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (quotation marks omitted).

During the plea hearing, the district court questioned Marulanda about the sentence-appeal waiver. The district court accurately explained the provisions of the waiver to Marulanda, including the exceptions that would allow him to appeal. Marulanda stated that the terms of the plea agreement were clear to him. Because the government has shown that the district court specifically questioned Marulanda about the waiver during the plea colloquy, the sentence-appeal waiver is enforceable. And, because none of the exceptions in the sentence-appeal waiver apply, we dismiss Marulanda's appeal of his sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**