[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14733
Non-Argument Calendar
_____

D.C. Docket No. 5:18-cr-00074-MTT-CHW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONNIE LEE HUGHES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 15, 2020)

Before BRANCH, BRASHER, and FAY, Circuit Judges.

PER CURIAM:

Ronnie Hughes appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Because the

jury convicted shortly after the district court placed an alternate juror, Hughes argues that the district court erred in failing to inquire *sua sponte* into whether the jurors had begun deliberations anew after the alternate joined the jury. On the facts of this case, the length of the jurors' deliberations is unremarkable and, ultimately, irrelevant. We affirm.

## BACKGROUND

We presume familiarity with the factual and procedural history and describe it below only to the extent necessary to address the issues raised in this appeal.

Hughes was indicted on charges of knowingly possessing two firearms that had been shipped and transported in interstate commerce as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At trial, the district court informed the jury that the parties had stipulated that Hughes was previously convicted of a felony and that Hughes knew of his prior conviction. The government then presented its case over the course of two-and-a-half hours. The government called four witnesses.

The first witness was a confidential informant. He testified that he had been a confidential informant for the past eighteen years. One day, while he was doing yardwork for Hughes, Hughes invited him into his house, showed him two firearms, and asked him if he knew someone who might be interested in purchasing them. The informant later contacted the local officers and arranged a firearms sale with Hughes.

2

The government admitted into evidence texts between Hughes and the informant with pictures of the firearms and prices. The day after Hughes sent the texts, the officers arrested him en route to the informant's house for the sale.

The second witness was the officer who bought the firearms from Hughes. After the informant contacted him, the purchasing officer confirmed that Hughes was a convicted felon and helped the informant set up a controlled buy of the firearms. While in the officer's presence, the informant called Hughes to discuss the sale and Hughes stated that "he is a convicted felon, and that the buyers better not be cops." When the officers arrested Hughes, they found firearms in his car that matched the firearms in the photos Hughes sent to the informant.

Another officer testified as the government's third witness. He stated that while Hughes was in the officer's car, Hughes asked, "Why are you taking my guns?" The government's fourth and final witness was an ATF special agent who identified two of the seized firearms as having been manufactured outside of Georgia. The government then rested its case.

Hughes called only one witness, his mother-in-law. She provided no useful information.

After Hughes rested, the court charged the jury, including the alternates, and instructed the jury to begin deliberations. During deliberations, the jury submitted to the court three questions about the interstate-commerce element of Section

3

922(g)(1). First, the jury asked, "Are we finding on possession or interstate commerce?" Second, whether "federal possession with interstate commerce [is] different than non-federal possession by a felon." And third, what is the statute "on interstate commerce." The court responded to each question by referring the jury to the instruction regarding the facts that the government had to prove.

The jury then stated that they were "unable to come to an agreement at this time" and the court instructed them to continue deliberating. One of the jurors then sent the court a note that said the jury had reached a verdict of guilty and he was the only holdout because he "refuse[d] to vote guilty because of the way the law is written." The parties agreed to have the court ask the juror for an explanation. The juror responded, "It's pretty simple really. I know that he's guilty," but "[t]he problem I have is with … the interstate commerce part of it" because "I cannot see them being charged with interstate commerce … when it may have been just the next door neighbor that had already bought it, [and who] either gave it to him or sold it to him." The juror further stated that "just about every gun in the country comes from some state other than Georgia." The government, defense counsel, and the court interpreted this statement to be a disagreement with the law. The court dismissed the juror without objection.

The district court summoned the remaining jurors to the courtroom and put the first alternate on the jury. Because the newly appointed juror had not been with

4

the jurors from the beginning of their deliberations, the court instructed the reconstituted jury to begin their deliberations from the start. Fifteen minutes later, the jury returned a guilty verdict. The district court discharged the jury, and the defense neither lodged an objection nor requested to poll the jurors.

The court sentenced Hughes to 210 months of imprisonment and five years of supervised release. Hughes timely appealed.

## DISCUSSION

Hughes does not challenge the district court's decision to replace the juror with an alternate, only the district court's failure to make sure that the jury began to deliberate anew after the alternate was placed. Specifically, Hughes argues that the district court violated his Sixth Amendment right to an impartial jury when it did not inquire into whether the jury had begun deliberations anew when it returned a verdict less than fifteen minutes after an alternate was added. The government responds that the district court instructed the jury to begin deliberations anew and courts must presume that the jury followed instructions. The government further notes that this Court has never required deliberations to last a specific amount of time. We agree with the government and affirm.

We review whether a defendant's Sixth Amendment rights were violated de novo. *United States v. Terry*, 60 F.3d 1541, 1543 (11th Cir. 1995). But we review for plain error where, as here, a claim is unpreserved, even if that claim is a

5

constitutional one. Fed. R. Crim. P. 52(b); *United States v. Simmons*, 961 F.2d 183, 185 & n.1 (11th Cir. 1992). Under plain error review, the defendant must demonstrate that: (1) there was an error; (2) the error was plain; (3) the error affects his substantial rights; and (4) "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotation marks omitted).

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. "The jury must determine guilt solely on the basis of the evidence presented at trial and the court's instructions as to the applicable law." *United States v. Siegelman*, 640 F.3d 1159, 1182 (11th Cir. 2011). We presume that the jury was impartial and followed the district court's instructions. *Id.* at 1182, 1184.

We have admonished district courts that they should be reluctant to invade the sanctity of the jury's deliberation room and should "err on the side of too little inquiry as opposed to too much." *United States v. Abbell*, 271 F.3d 1286, 1304 n.20 (11th Cir. 2001). This reluctance extends to the length of deliberations, and we have never set a precise length of time that a jury must deliberate in a criminal case. *See Armstrong v. Dugger*, 833 F.2d 1430, 1434 (11th Cir. 1987) ("A defendant's right to due process is not violated when the jury deliberates for a short period of time because the empaneled jury is of one mind before beginning deliberations."). And it is neither "suspicious, questionable, [n]or remarkable" when a jury returns a verdict

within twenty minutes in a straightforward case. *Kimes v. United States*, 242 F.2d 99, 101 (5th Cir. 1957) (all facts undisputed except defendant's alibi). Standing alone, a short period of deliberations does not show prejudice. *See United States v. Annamalai*, 939 F.3d 1216, 1222 (11th Cir. 2019) ("The jury's quick deliberation and straight-ticket conviction on all charges give us some pause, but we presume that juries will follow the instructions given by the district court.").

No error occurred in permitting the newly reformed jury to return a verdict in fifteen minutes, and even if there were error, it was not plain. That the jury deliberated for a relatively short period of time after the alternate juror was placed is unremarkable. The jury was presented with a straightforward case. Under Sections 922(g) and 924(a)(2), the government needed to prove that Hughes knew he was a felon and knowingly "possess[ed] in or affecting commerce, any firearm or ammunition." All of the evidence clearly indicated Hughes's guilt on each element of the government's case. Hughes stipulated that he was a felon. He admitted that he was a felon on a phone call. He texted pictures of firearms with prices to the informant. Upon arrest, he asked the officer why he was taking his guns. The ATF special agent testified that the guns were manufactured outside of Georgia. There is also no indication that the district court failed to take steps to prevent the alternate juror from learning extrinsic information, and the court instructed the jury to begin deliberations anew. Absent any evidence to the contrary, we assume that the jury

followed this instruction. *United States v. Acevedo*, 141 F.3d 1421, 1426–27 (11th Cir. 1998).

Hughes cites to *Peek v. Kemp*, but *Peek* says nothing about whether a district court's failure to inquire into the jury's relatively short deliberations was error. *Peek* was a habeas case addressing the level of inquiry constitutionally necessary to replace a juror. 784 F.2d 1479, 1481 (11th Cir. 1986) (en banc). In *Peek*, the trial court received the consent of both parties to replace a juror after the juror became too ill to proceed. *Id.* at 1482. Fifteen to thirty minutes later the jury reached a verdict of guilty. *Id.* at 1482 n.2. The parties later learned that the ill juror was the only not guilty vote. *Id.* at 1482. We held that the record supported the fact that the juror was too ill to continue, even though the district court neither instructed the jury to begin deliberations anew nor questioned the juror before dismissing him, so there was no constitutional violation. *Id.* at 1484–85. We found no error in *Peek*, and we noted the short time of deliberations only in a footnote. *Peek* does not support Hughes's argument at all.

Because there was no error, plain or otherwise, and Hughes was not prejudiced, we need not address the fourth element of our plain error review.

## CONCLUSION

The district court is **AFFIRMED**.