[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12700
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20393-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANDRA RUBALLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 29, 2020)

Before BRANCH, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Sandra Ruballo appeals her 120-month below-guidelines[1] sentence imposed after Ruballo pleaded guilty to conspiracy to commit wire fraud, 18 U.S.C. § 1349; wire fraud, 18 U.S.C. § 1343; conspiracy to commit money laundering, 18 U.S.C. § 1956(h); and money laundering, 18 U.S.C. § 1956(a)(1)(B)(i). Ruballo also appeals the district court's restitution and forfeiture orders. Reversible error has been shown; we affirm in part and vacate in part and remand for further proceedings.

Briefly stated, Ruballo was charged with conspiring with others in a scheme to defraud the government. Ruballo was the Executive Director of Highland Food Resources, Inc. ("Highland"), an organization that contracted with Florida daycare centers to process paperwork and claims for meal reimbursements under the Child Care Food Program ("CCFP"). The CCFP -- a federal program funded by the United States Department of Agriculture ("USDA") and administered by the Florida Department of Health ("Florida") -- aims to provide nutritious meals to underprivileged children in daycare centers.

---

[1] The district court calculated Ruballo's advisory guidelines range as 168 to 210 months' imprisonment.

2

As a "sponsoring organization" under the CCFP, Highland was responsible for approving free and reduced meal applications, conducting site inspections, and reviewing meal counts and enrollment rosters. Highland electronically submitted monthly claims for reimbursement on behalf of its 53 associated daycare centers. Florida issued reimbursement payments directly to Highland, which would then distribute the payments (minus Highland's administrative costs) to the daycare centers. Through a bidding process, Highland also contracted with a caterer -- Montoya Holdings, Inc., owned by co-conspirator Carlos Montoya -- to deliver meals to the daycare centers.

Highland and Montoya Holdings came under investigation following a foodborne illness outbreak at several of Highland's daycare centers, which resulted in the hospitalization of 30 children. Investigators discovered that Ruballo and her co-conspirators had been submitting inflated monthly CCFP reimbursement claims. Also -- in exchange for kickbacks from Montoya -- Ruballo rigged the catering bid process to ensure that Montoya Holdings received the contract. Ruballo also concealed from Florida complaints about Montoya's catering, and Ruballo instructed her employees to falsify complaints about other caterers.

3

Ruballo pleaded guilty without a plea agreement.  Montoya pleaded not guilty.  Following a month-long trial, the jury found Montoya guilty of conspiracy to commit wire fraud and federal program bribery, in violation of 18 U.S.C. § 666.

The district court then conducted a combined sentencing hearing for both Ruballo and for Montoya.  The district court sentenced Ruballo to a total of 120 months' imprisonment.  The district court also ordered Ruballo to pay restitution in the amount of $13,231,277 and ordered the forfeiture of over $14 million.  The district court sentenced Montoya to 97 months' imprisonment and ordered Montoya to pay $12,962,399 in restitution and ordered the forfeiture of over $13 million.

I.    Sentencing Hearing Evidence[2]

On appeal, Ruballo first contends that her total sentence was based on

---

[2] In a footnote -- toward the end of the section of Ruballo's appellate brief challenging chiefly the district court's consideration of evidence from Montoya's criminal trial -- Ruballo asserts for the first time that the district court's forfeiture order (1) was contrary to the Supreme Court's decision in Honeycutt v. United States, 137 S. Ct. 1626 (2017), and (2) violated the Eighth Amendment's Excessive Fines Clause.  We will not address these arguments on appeal.  When -- as in this case -- a party fails to "devote a discrete, substantial portion" of his appellate brief to an issue and, instead, "buries" the issue within other arguments, the issue is deemed abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681-82 (11th Cir. 2014); United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

disputed facts that the government failed to prove by a preponderance of the evidence. Briefly stated, Ruballo says the district court -- in enhancing Ruballo's sentence and in calculating the restitution and forfeiture amounts -- relied improperly on testimony and exhibits introduced during Montoya's criminal trial. Ruballo also says the district court erred in considering an email sent from Florida to the probation officer. No objection was made to the district court about the purported improper taking into account of these things.

Because Ruballo raises these arguments for the first time on appeal, we review her arguments only for plain error. See United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014). Under the plain-error standard, we will correct an error only if the defendant demonstrates that (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). To be plain, an error must be obvious and clear under current law. United States v. Lange, 862 F.3d 1290, 1296 (11th Cir. 2017). Plain-error review involves substantial deference to the district court's acts. See United States v. Simmons, 961 F.2d 183, 185 (11th Cir. 1992). Needless to say, the standard of review is important in deciding appeals.

5

*Montoya Trial Evidence:*

Generally speaking, "evidence presented at the trial of another may not . . . be used to fashion a defendant's sentence," unless the defendant is given an "opportunity to rebut the evidence or generally to cast doubt upon its reliability." United States v. Castellanos, 904 F.2d 1490, 1496 (11th Cir. 1990).  Thus, when the government seeks to rely on evidence presented at a co-conspirator's trial or sentencing hearing, the government must make transcripts of the pertinent proceedings available to the defendant and to the district court.  United States v. Washington, 714 F.3d 1358, 1362 (11th Cir. 2013).

The district court committed no plain error in considering the Montoya trial evidence.  In written objections and responses to the Pre-Sentence Investigation Report ("PSI"), both Ruballo and the government cited to transcripts and to exhibits from Montoya's trial.  Both parties again relied on trial evidence during the sentencing hearing.  The record thus demonstrates that Ruballo had access to at least some of the pertinent trial transcripts and exhibits.  Ruballo's lawyer also said expressly during the sentencing hearing that he had "read the testimony" in the trial transcripts.

6

In addition, the government's response to Ruballo's PSI objections put Ruballo on notice of the trial evidence upon which the government intended to rely at sentencing. Ruballo was also able to present arguments during the sentencing hearing rebutting and casting doubt upon the trial evidence introduced by the government. Under these circumstances, we see no obvious and clear error in the district court's consideration of the complained-of trial evidence in imposing Ruballo's sentence.

*Restitution Email:*

Ruballo also challenges the district court's giving any consideration to an email -- titled "United States v. Sandra Rubal[l]o, et al. 18-CR-20393 (Restitution)" -- sent by Florida's Bureau Chief to the probation officer and to the government in preparation for sentencing ("Restitution Email"). Ruballo says she never received a copy of the email. Nor was a copy of the email admitted into evidence during the sentencing hearing. No objection was made in district court; so again we must see plain error for us to interfere with the district court.

After the sentencing hearing, the government filed a copy of the Restitution Email with the district court but included none of the attachments referenced in the

7

email.  The text of the email said that Florida's estimate of Ruballo's restitution amount was $13,231,277 based on "fraudulent meal reimbursement gross overpayments and fraudulent administrative earnings for fake employees and services."  The email indicated that "spreadsheets" used to estimate Ruballo's restitution amount were attached, but those documents are not in the record.

The district court committed no plain error in considering information from the Restitution Email (for what it was worth) at the sentencing hearing.  That no witness testified about the email does not bar the district court from considering the information.  A sentencing court has wide discretion to consider information that is relevant to sentencing "without regard to [the] admissibility [of the information] under the rules of evidence applicable at trial."  U.S.S.G. § 6A1.3(a); see also Pepper v. United States, 562 U.S. 476, 480 (2011).  Moreover, although a copy of the Restitution Email itself was not introduced during the sentencing hearing, the substance of the email -- including Florida's estimated restitution amount -- was described in an addendum to the PSI and was thus already a part of the record.

II.     Sentencing Enhancements

We review the district court's factual findings for clear error and review de

8

novo the district court's application of those facts to the guidelines.  See United States v. Williams, 527 F.3d 1235, 1247-48 (11th Cir. 2008).

"When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence."  Washington, 714 F.3d at 1361.

*Abuse of Public Trust, U.S.S.G. § 3B1.3:*

A defendant is subject to a two-level enhancement if the government establishes that the defendant (1) held a position of public or private trust; and (2) "abused that position in a way that significantly facilitated the commission or concealment of the offense."  United States v. Ward, 222 F.3d 909, 911 (11th Cir. 2000); U.S.S.G. § 3B1.3.  Whether the abuse-of-trust enhancement is appropriate is "highly dependent on the specific facts in each situation."  United States v. Morris, 286 F.3d 1291, 1296-97 (11th Cir. 2002).

A position of public or private trust is one "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, cmt. (n.1).  People in these

positions "ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." Id.  In determining whether a defendant occupied a position of trust for purposes of section 3B1.3, courts consider the defendant's relationship to the victim and whether "the defendant has abused discretionary authority entrusted to the defendant by the victim." Williams, 527 F.3d at 1250 (emphasis omitted).  "[I]n the fraud context, there must be a showing that the victim placed a special trust in the defendant beyond ordinary reliance on the defendant's integrity and honesty that underlies every fraud scenario." Id. at 1250-51.

The district court committed no error in determining that Ruballo held a position of public trust.  Highland contracted with Florida to help administer and to oversee the CCFP.  As Highland's Executive Director, Ruballo had considerable discretion to administer federal funds, conduct a competitive bidding process for catering contracts, and to conduct audits of daycare centers and catering companies to ensure compliance with CCFP rules and regulations.

The government showed by a preponderance of the evidence that Ruballo abused her position of trust for her own personal profit and to conceal evidence of her and her co-conspirators' fraud.  Among other things, Ruballo took affirmative steps and directed others to hide and to destroy food quality complaints about

10

Montoya's catering.  See United States v. Harness, 180 F.3d 1232, 1236-37 (11th Cir. 1999) (affirming application of abuse-of-trust enhancement to an accountant who -- as the Director of a federally-funded program -- embezzled federal funds and falsified the organization's books: defendant "used his position to illegally divert [federal] funds and used his position to conceal his and his co-defendants' fraudulent activity").

Ruballo's reliance on Williams is misplaced.  In Williams, we concluded the defendant lacked the requisite discretion to justify an abuse-of-trust enhancement because the victim federal agency awarded federal funds "only after reviewing and pre-approving a specific line-item budget" and never entrusted the defendant with discretion to allocate those funds.  See 527 F.3d at 1251.  Unlike the defendant in Williams, Ruballo had significant discretion -- with little oversight from Florida or from USDA -- to award the catering contract, to conduct site audits, to submit claims for meal reimbursement, and to distribute federal funds.  We also reject Ruballo's contention that the conduct underlying the abuse-of-trust enhancement is already accounted for in her base offense level.  See United States v. Bracciale, 374 F.3d 998, 1005, 1007-09 (11th Cir. 2004) (concluding that defendant's abuse of trust was not included in the base offense level for his fraud offense because the

base offense level was "not dependent on any abuse of trust or breach of fiduciary duty.").

*Obstruction of Justice, U.S.S.G. § 3C1.1:*

The guidelines provide for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Conduct warranting an obstruction-of-justice enhancement includes "destroying or concealing or directing . . . another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so." Id., cmt. (n.4(D)).

We see no error in the district court's application of a two-level enhancement for obstruction of justice. The government presented evidence showing that -- during the execution of a search warrant on Highland -- Ruballo deleted incriminating information from her phone, including a kickback ledger. Only a fraction of that information was later recovered. In addition, after learning

about Florida's investigation into Highland, Ruballo attempted to hinder the investigation by shredding complaints about Montoya's food and by ordering her employees to falsify complaints about other caterers.

Given the evidence that Ruballo destroyed evidence and directed others to conceal evidence material to Florida's investigation, the district court applied properly a two-level enhancement for obstruction of justice.

III.    Loss Amount and Restitution Obligation

Ruballo challenges the district court's determination of a loss amount of $14 million: an amount that resulted in a 20-level offense increase under U.S.S.G. § 2B1.1(b)(1).  Ruballo also challenges the district court's determination that she was obligated to pay $13,231,277 in restitution.

We review for clear error the district court's determination about the amount of loss under the guidelines and about the district court's factual findings for the amount of restitution.  See United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011) (loss amount); United States v. Huff, 609 F.3d 1240, 1247 (11th Cir. 2010) (restitution).

13

*Loss Amount:*

Under the guidelines, the loss is calculated as "the greater of the actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. (n.3(A)). "A sentencing court need only make a reasonable estimate of the loss, given the available information." Barrington, 648 F.3d at 1197. Because estimating a loss amount is a highly fact-dependent inquiry, we have said that "district judges are entitled to considerable leeway in choosing how to go about this task." United States v. Campbell, 765 F.3d 1291, 1301 (11th Cir. 2014). The district court however must "support its loss calculation with reliable and specific evidence." Id. at 1304. The government bears the burden of proving the loss amount by a preponderance of the evidence. Id.

In determining the loss amount attributable to Ruballo, the district court said -- without further explanation -- that the government's proposed loss amount ($26.37 million) was "overstated" and that the loss amount was, instead, $14 million.

We are unable to determine from this statement the evidence upon which the district court relied in calculating the loss amount. Based on the district court's mention of the Restitution Email during an earlier exchange with Ruballo's lawyer

14

about loss amount, however, we cannot rule out that the district court relied chiefly on the Restitution Email (and Florida's estimated restitution of $13,231,277) in determining the $14 million loss amount.

The body of the Restitution Email, however, provides no indication about how the restitution amount was calculated. Instead, the email references spreadsheets that were purportedly attached to the email but that seem never to have been placed in the record. Because nothing in the record evidences how the particular dollar amount was derived, the Restitution Email by itself is no "specific and reliable" evidence supporting the $14 million loss calculation: just not worth much as evidence on loss/restitution.

To allow for meaningful appellate review, the district court must provide information sufficient to permit us to determine the factual basis upon which the district court relied to reach its loss calculation. See United States v. Gupta, 572 F.3d 878, 889 (11th Cir. 2009) (remanding the issue of loss amount where the district court made no factual findings supporting its loss estimate and, instead, merely picked a number in between the parties' estimates). Although other evidence in the record might support the district court's loss calculation, we are unable at this point to reconstruct the district court's reasoning. Thus, a remand is necessary.

15

*Restitution Amount:*

Under the Mandatory Victim Restitution Act ("MVRA"), the district court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); see also United States v. Robertson, 493 F.3d 1322 (11th Cir. 2007) (applying the MVRA to cases involving wire or mail fraud). The "amount of restitution owed to each victim must be based on the amount of loss actually caused by the defendant's conduct." United States v. Martin, 803 F.3d 581, 595 (11th Cir. 2015) (quotations and emphasis omitted).

We have said that "the method for calculating actual loss, as opposed to intended loss, under the Sentencing Guidelines is largely the same as the method for establishing actual loss to identifiable victims under the MVRA." See United States v. Stein, 846 F.3d 1135, 1153 (11th Cir. 2017). The government bears the burden of proving the restitution amount and "must deduct any value that a defendant's fraudulent scheme imparted to the victims." Huff, 609 F.3d at 1247.

When a district court orders restitution, it "must explain its findings with sufficient clarity to enable this court to adequately perform its function on

16

appellate review." Id. at 1248.  In doing so, "the district court must make specific factual findings of whether the victim suffered a loss and the amount of those actual losses," including whether value had been rendered to the victim that would be offset against the restitution amount.  Id. at 1249 (emphasis omitted) (vacating and remanding the issue of restitution where the district court adopted a PSI restitution calculation and made no specific findings about the victims' actual loss amount).

In ordering restitution, the district court adopted expressly the restitution amount set forth in the Restitution Email.  As already discussed, however, the record is void of information about how that restitution amount was calculated.  Moreover, the district court made no specific factual findings about the amount of actual loss suffered by Florida, including about the potential value of services actually rendered by Ruballo and by her co-conspirators that might be deducted from the total loss amount.  The record before us allows for no meaningful appellate review of the restitution award; we remand for further proceedings.

IV.    Conclusion

We affirm the district court's application of sentencing enhancements for abuse of trust and for obstruction of justice. We vacate Ruballo's sentence and remand for the district court to reconsider and to explain more fully its calculation of the amount of loss and the amount of restitution owed. In addition, we grant -- in part only -- the government's request that it be permitted on remand to introduce into evidence a complete copy of the Restitution Email: attachments in fact unseen by the sentencing judge by the time of imposing sentence are not to be introduced into the record.[3] For background, see United States v. Washington, 714 F.3d 1358, 1362 (11th Cir. 2013) (we have discretion to permit the government to present evidence at resentencing).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

[3] We expect the lawyers and the district judge will need to confer to determine what can be introduced into the record per this opinion. We also expect that the lawyers will be allowed a reasonable chance to object to the contents of the added documents and to debate the weight the email documents should bear on the questions of loss and restitution.